HARRY C. COLWELL *v.* HOWARD COUNTY, MARYLAND ET AL.

[No. 712, September Term, 1975.]

*Decided March 30, 1976.*

The cause was argued before MOYLAN, POWERS and LOWE, JJ.

*Bernard F. Goldberg,* with whom was *Michael A. Neal* on the brief, for appellant.

*R. Russell Sadler, Deputy County Solicitor,* for appellees.

Lowe, J., delivered the opinion of the Court.

*Pons Asinorum*[1]

On April 28, 1970 an amendment was adopted adding Sections 22A.01-22A.05 as part of Howard County's "Euclidean" Zoning Regulations.[2] It provided that whenever the zoning map of Howard County was amended, "such amendment shall be subject to the following conditions":

.01 A Site Development Plan must be submitted to the Howard County Office of Planning and Zoning within 2 years, or the property shall revert to its prior classification.

.02 The plan shall show location of specified facilities and must be approved by the Howard County Office of Planning and Zoning before any construction is started.

.03 Building permits must be applied for within one year of site plan approval for a building or

---

1. It is somehow appropriate that the rigidity of an Euclidean zone can only be assailed by the narrow and difficult procedural path of the change-mistake rule. Ironically, the fifth proposition of Book I of Euclid's Elements has reference to an equally difficult procedural path which he terms the *pons asinorum* — the bridge of asses. It is too difficult for asses, or for stupid boys, to get over.

2. In Board v. Turf Valley, 247 Md. 556, the Court of Appeals recognized that Howard County's zoning law created Euclidean zoning rather than a "floating zone." The significance of that distinction in Turf Valley was that under Euclidean zoning the "mistake-change in conditions" rule applies to zoning change applications, whereas under the floating zone approach there is greater discretion in the administrator of the governing body to grant zoning changes.

"The analogy of special exception uses has been applied to zoning actions dealing with the placement of a floating zone. *Bujno v. Montgomery Co. Council,* 243 Md. 110, 220 A. 2d 126 (1966); *Chatham,* [243 Md. 138] *supra; Beall,* [240 Md. 77] *supra,* and authorities therein cited. But this analogy is not applicable to situations like the one before us, where the governing application is only to change one existing use, established under a comprehensive zoning plan, to another existing, established use, where the result would be a spot rezoning and where no original mistake or subsequent change has been established. To apply the floating zone approach to such situations would be in effect, either to open the floodgates of uncontrolled administrative discretion or to authorize the courts to zone and to rezone." Board v. Turf Valley, 247 Md. at 562.

buildings comprising 25% of the building floor area of the site plan, or the zoning of the property shall be void and shall revert to the prior classification.

.04  Substantial construction under the building permits must be underway within 3 years or the property shall revert to its original classification.

.05  Although the Zoning Board may grant one one-year extension if recommended by the Planning Board, if a property should revert, no further substantially similar petition may be considered for 1 year.

In short, Howard County now warns its successful zoning applicants to "use it or lose it."

## Facts

Appellant, Harry C. Colwell, owns certain lands in Howard County for which he and/or his predecessor in interest sought and obtained a zoning classification change from R-20 (residential) to R-A-1 (apartments). Although the Zoning Board denied that application, appellant prevailed on appeal before the Circuit Court on December 22, 1972.

Two years later, on November 7, 1974, appellant was notified by the Office of Planning and Zoning that unless a Site Development Plan was filed pursuant to the aforesaid regulations, his zoning classification would revert to its former status. In response to that notice, Colwell filed a Bill of Complaint for Declaratory Judgment in the Circuit Court for Howard County, questioning the validity of the reverter provisions of the above quoted sections of the Zoning Regulations of Howard County.

His primary contention below and on appeal is that the provision under which his land reverted to its previous zoning classification is nothing more than an enactment of conditional zoning which he argues is repugnant to both law and reason. He cites as authority for this proposition *Hausmann & Johnson, Inc. v. Berea Bd. of Bldg. Code App.,*

320 N.E.2d 685 (Ohio) and *Scrutton v. County of Sacramento,* 79 Cal. Rptr. 872. Appellant also points to dicta in *Templeton v. County Council,* 21 Md. App. 636, which we have found to be totally inapplicable to the present appeal.

With the exception of the applicability of the term "conditional," we fail to see how any of the authorities cited relate to the issue before us. All of the cases appellant cites as authority involved *contractual* agreements made between individuals and the zoning authority. In *Scrutton v. County of Sacramento, supra,* the planning commission executed a contract under which the applicant for rezoning agreed to improve a 27 foot strip of her land at an expense of approximately $13,000 in exchange for the rezoning of that land from agricultural to multiple family residential. *Hausmann & Johnson, Inc. v. Berea Bd. of Bldg. Code App., supra,* concerned an ordinance which required persons applying for rezoning to execute reversionary contracts with the city agreeing to use the property for the purpose requested within twelve months. The public policy behind invalidating these conditional zoning agreements was recognized by the Maryland Court of Appeals in *Baylis v. City of Baltimore,* 219 Md. 164, 170, where it was stated:

> ". . . that rezoning based on offers or agreements with the owners disrupts the basic plan, and thus is subversive of the public policy reflected in the overall legislation, that the resulting 'contract' is nugatory because a municipality is not able to make agreements which inhibit its police powers, and that restrictions in a particular zone should not be left to extrinsic evidence."

See also *Mont. Co. v. Nat'l Capital Realty,* 267 Md. 364; *Wakefield v. Kraft,* 202 Md. 136 and *Hausmann & Johnson, Inc., supra,* at 690.

The primary objection to conditional zoning then, is that it permits a use of particular property in a zoning district subject to restrictions *other than those applicable to all land similarly classified. Mayor and City Council of Baltimore v. Crane,* 277 Md. 198; Anderson, *American Law of Zoning,* §

8.20. The evils inherent in conditional zoning *agreements* are clearly not inherent in a regulation that applies equally to all rezoned properties. We are not persuaded by appellant's attempt to analogize these distinct types of conditions on rezoning. The "use it or lose it" concept is an effective tool for controlling premature land development. Additionally, it serves to inhibit manipulative zoning by avaricious land speculators who are often unconcerned about the effect of development on a community. In short, it has a rational relationship to the purposes of zoning regulations and is a reasonable exercise of police powers. See Md. Code, Art. 66B, § 4.03.

### Uniformity v. Retroactivity

Because the ordinance is expressly limited to "any amendment to the Zoning Map . . . made after the effective date of this amendment," appellant further contends that the requirement that zoning be uniform is violated since properties zoned *after* the enactment of the regulation are subject to reversion to their former classification and properties zoned *before* the enactment of the regulation are not.

Appellant's argument highlights a traditional legislative dilemma in fashioning laws which will successfully navigate the constitutional seas. If legislation applies both past and present, it is caught in the whirlpool of retroactivity. If it avoids that whirlpool by applying the law prospectively only, the monster demanding uniformity lies in wait.

We find no fault with the legislative decision of the County Council to apply the regulation prospectively only. Although neither Maryland nor federal law specifically proscribes retroactivity for civil statutes, *Braverman v. Bar Assn. of Balto.*, 209 Md. 328, 348, *cert. den.*, 352 U. S. 830, retroactive statutes are not favored even when they do not conflict with vested or other rights guaranteed by the Constitution. *Goldston v. Karukas*, 180 Md. 232. Therefore, and in light of the strong presumption in favor of the validity of such exercises of police power, *Templeton v.*

*County Council, supra,* we will uphold the prospective operation of these regulations.

### The Use It or Lose It Rationale

Notwithstanding that appellant's immediate concern rests with the reversion pursuant to § 22A.01-.02 for failure to submit a site plan within two years of the zoning change, we will also consider the validity of the additional requirements that application be made for a building permit within one year of approval of a site plan, § 22A.03, and that substantial construction must be commenced within three years of the permit's issuance. Although there are few cases dealing with the "use it or lose it" concept of zoning, its validity has been acknowledged and approved in scattered cases, usually when reversion has taken place as a result of the lapse of a specified time period following the issuance of a permit.

In *Sherwood Lanes, Inc. v. City of San Angelo,* 511 S.W.2d 597, the Court of Civil Appeals of Texas held that it was within the scope of legislative power of a city commission to prescribe that special permits authorized by ordinance would be inoperative if not accepted and used within one year from the enactment of the ordinance.

In *Upton v. Gray,* 74 Cal. Rptr. 783, the California Court of Appeal was asked to interpret a zoning ordinance which provided that any building permit would expire within one year of issuance unless the use for which it was granted was established within that period of time. Although they never dealt directly with the validity of such a requirement, the court recognized the rationale behind it stating:

> "it is apparent, and both parties seem to agree, that the purpose of section 34.9 of the zoning ordinance is to prevent one from reserving land for future purposes when that person has no good faith intent to presently commence upon the proposed use." *Upton, supra,* at 787.

The Supreme Court of New Jersey in *Houdaille Constr.*

*Mats., Inc. v. Bd. of Adjustment,* 223 A. 2d 210, held inter alia that the condition that a special use permit be accepted within 60 days was invalid and arbitrary, "in the absence of a general provision in the ordinance requiring all building or use permittees to signify acceptance within that time period." However, the court also held that "[t]he municipality can by a reasonable ordinance provision limit the life of a building or use permit duly granted." See also *Kurowski v. Board of Adjustment of City of Bayonne,* 78 A. 2d 429 (N.J.).

### When Zoning Vests as a Right

Although no Maryland case to our knowledge has treated the question raised here directly, it is clear from the reasoning of the Court of Appeals on related issues that appellant's contention[3] that he was denied due process is without merit. For appellant to have been denied due process, he must have had a vested right to the zoning classification which he lost by operation of law and passage of time. The Court of Appeals has held that the obtention of a building permit in furtherance of a then permitted use, does not create a vested right constitutionally insulated against a change in the zoning ordinance forbidding that particular use. *Ross v. Montgomery County,* 252 Md. 497, 504.

*Rockville Fuel v. Gaithersburg,* 266 Md. 117, reiterates the generally accepted rule that there is no vested right in zoning until construction is substantially begun, or as colloquially phrased, "the shovel is in the ground." The Court quoted from 2 Rathkopf, *The Law of Zoning and Planning,* 3d ed., Ch. 57, § 3, at 37-6 to 57-7:

> " ' * * * The majority rule, which can be synthesized from the multitudinous decisions in this area, may be stated as follows: A landowner will be held to have acquired a vested right to continue the

---

**3.** Although appellant does not use the language of the due process clause of the Constitution, Section 1 of the 14th Amendment, we assume that that is the constitutional ground he is asserting.

construction of a building or structure and to initiate and continue a use despite a restriction contained in an ordinance where, prior to the effective date of the ordinance, in reliance upon a permit theretofore validly issued, he has, in good faith, made a substantial change of position in relation to the land, made substantial expenditures, or has incurred substantial obligations. * * * ' " *Id.* at 125.

The Court also cited with approval and followed their prior decisions in *Anne Arundel County v. Snyder*, 186 Md. 342 and *Mayor & C. C. of Balto. v. Shapiro*, 187 Md. 623.[4]

In *Shapiro*, the landowner purchased a tract of land for the express purpose of engaging in a use permitted under the existing provisions of the zoning law, and had actually applied for and received a permit to engage in that permitted use some five months prior to the adoption of an amendment to the zoning ordinance prohibiting that use. The *Shapiro* Court said:

"The mere issuance of a permit, where the permittee has not commenced the work or incurred substantial expense on the faith of it, does not create a vested right, or estop the municipal authorities from revoking it." 187 Md. at 634.

This rule has been continually and frequently adhered to, see *Malmar Associates v. Board*, 260 Md. 292; *Richmond Corp. v. Bd. of Co. Comm'rs*, 254 Md. 244. Surely, if a landowner's right to a particular zoning classification is not yet vested, it does no violence to his constitutional rights to require through a generally applied, properly enacted law, that a zoning change be utilized within a reasonable time period.

---

**4.** See Steuart Petroleum Co. v. Board, 276 Md. 435, 442-444, for a review of cases dealing with "vested rights."

## The Moratorium

Appellant would have us believe that his sole reason for non-compliance with the two-year limitation is that:

"A sewer moratorium has been declared which prevents the development of the property as rezoned, since public utilities are a requirement of the Zoning Regulations, however, water and sewer are available, subject to the moratorium."

While this fact gives appellant a more sympathetic position from which to appeal, his legal posture is no different than if he had simply elected not to comply for reasons left unstated. Appellant does not attack the sewer moratorium directly. Rather, he contends that by virtue of the moratorium, the County has rendered it impossible for him to comply with the site plan requirement. Upon analysis, this argument militates more favorably for the County than for appellant.

Assuming, as we must, that the sewer moratorium was imposed for the health, safety and welfare of the people of Howard County, it follows that the reverter clause in the zoning ordinance also serves that purpose since it operates as a mechanism by which the zoning authorities can reconsider the rezoning of land after the moratorium is lifted. For example, the sewerage difficulties which led to the imposition of the moratorium may very well compel restricting the density of development in the area in which appellant's land is located. Should appellant again seek apartment zoning, as he may do one year after the reversion, the Board would then have an opportunity to consider his application with that in mind. This very pointedly demonstrates how the provisions in question serve the desired purposes of zoning regulations as legislatively espoused in Md. Code, Art. 66B, § 4.03:

"Such regulations shall be made in accordance with the plan and designed to control congestion in the streets; to secure the public safety; to promote health, and the general welfare; to provide

18

adequate light and air; to promote the conservation of natural resources; to prevent environmental pollution, to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, recreation, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its suitability for particular uses, and with a view to conserving the value of buildings and encouraging the orderly development and the most appropriate use of land throughout the jurisdiction."

*Judgment affirmed.*
*Costs to be paid by appellant.*