# T & R JOINT VENTURE *v.* OFFICE OF PLANNING AND ZONING OF ANNE ARUNDEL COUNTY ET AL.

[No. 391, September Term, 1980.]

*Decided December 15, 1980.*

The cause was argued before GILBERT, C. J., and MELVIN and WILNER, JJ.

*Thomas M. Downs,* with whom were *Harry C. Blumenthal* and *Blumenthal, May, Downs & Merrill, P.A.* on the brief, for appellant.

*Steven P. Resnick, Deputy County Solicitor for Anne Arundel County,* for appellees.

WILNER, J., delivered the opinion of the Court.

This is a zoning case, but the issue before us is solely one of "standing" — whether the Anne Arundel County Office of Planning and Zoning (OPZ) had the right to appeal a decision of the Zoning Hearing Officer to the County Board of Appeals and thence to the circuit court. The Board, applying the law then in effect, concluded that it did not, and thus dismissed OPZ's appeal to it. The court, by applying a new ordinance, enacted during the pendency of the subsequent judicial appeal, concluded that OPZ did have the requisite standing, both before the Board and before it. The theretofore successful applicant (appellant) has appealed both aspects of the court's ruling.

We may best approach the issue before us by first considering briefly the statutory process for implementing zoning changes in Anne Arundel County and the role played by the three county agencies most directly involved in that process. These agencies are OPZ, the Zoning Hearing Officer, and the Board of Appeals, each being created by, and drawing its basic authority from, the county charter.

OPZ is created by § 530 of the charter. Headed by a Planning and Zoning Officer, it is responsible for "planning for the physical development and growth of the County," including preparation of a Master Plan for the county, and

the "preparation, administration and enforcement of a zoning map and of zoning rules and regulations which shall constitute a zoning code." These rules and regulations have legal effect only upon approval by the County Council through the enactment of an ordinance.

In addition to its planning function, vested by the charter, OPZ also performs certain administrative duties in terms of applications for zoning changes. The county code requires that applications for zoning map amendments, special exceptions, and variances be filed with OPZ. That office then sees to it, directly or indirectly, that the proper notice is posted on the property, and ultimately forwards the application to the Zoning Hearing Officer along with its comments.[1] OPZ is authorized to appear at the hearing before the Zoning Hearing Officer and present its position with respect to the application.[2]

The Office of Zoning Hearings is created by § 534 of the county charter. It is to be administered by the Zoning Hearing Officer who, under § 535, is responsible for conducting public hearings on petitions for zoning changes or reclassifications. He is authorized to grant variances and special exceptions "[s]ubject to appropriate principles, standards, rules, conditions and safeguards . . .," and he may also grant or deny reclassifications "in accordance with appropriate zoning regulations." Some of the more detailed rules governing the prehearing, hearing, and post-hearing procedures are set out in the county code. *See* § 13-360 (Rules IX — XVI) and §§ 13-340.5 — 13-340.9 (Alternate Zoning Regulations).

---

1. It appears from the county code that there are two sets of zoning regulations in effect in Anne Arundel County—One set, denoted as "Alternate Zoning Regulations," which governs in five tax assessment districts and parts of one other and one set for the balance of the county. The wording used to describe the procedure for initiating changes in zoning varies somewhat in the two sets of regulations, but in terms of the issue before us, the basic procedure is essentially the same. *Compare* § 13-360 (Rules VIII and IX) and § 13-338.7 (Alternate Zoning Regulations). At oral argument, the parties were uncertain whether this dichotomy is still in effect in light of subsequent comprehensive rezoning. We have since been advised by the County Solicitor that the alternate regulations now govern throughout the county.

2. *See, for example,* county code, § 13-360 (Rule VIII (a)).

The County Board of Appeals is created by § 601 of the county charter, pursuant to the authority conferred by Md. Ann. Code art. 25A, § 5. Among its other duties, the Board hears, *de novo,* all appeals from orders of the Zoning Hearing Officer. Further appeal is authorized to the circuit court. *See* county charter, § 604; Md. Ann. Code art. 25A, § 5 (U).

The controversy here began when appellant applied to have a 17-acre tract of land rezoned from R1 Residential to C3 General Commercial. Pursuant to the procedures described above, the matter was heard by the Zoning Hearing Officer. The Planning and Zoning Officer, or her designee, appeared at the hearing in opposition to the application. The thrust of her concern, apparently, was that the rezoning would require OPZ to make substantial alterations to the various master plans. Notwithstanding that objection, however, the Zoning Hearing Officer, on April 16, 1979, approved the application.

On May 14, 1979, OPZ noted an appeal from that decision to the County Board of Appeals. Appellant moved to dismiss the appeal on the ground that OPZ had no standing to bring it, not being a person "aggrieved" by the Zoning Hearing Officer's decision. The Board held an evidentiary hearing on the standing issue and ultimately agreed with appellant's position. On September 14, 1979, it dismissed OPZ's appeal solely on the ground that OPZ was not "aggrieved," and therefore had no right to appeal. As noted, OPZ then, on October 5, 1979, appealed that decision to the circuit court.

On November 6, 1979, the County Executive signed into law Bill No. 141-79 which, by amending county code, § 2-200 (Rule 5), purported to give OPZ specific authority or standing to appeal "any decision of the zoning hearing officer." Although the ordinance, by its own terms, took effect "forty-five (45) days from the date it bec[ame] law," which presumably would have been December 21, 1979, the court nevertheless applied the ordinance in the case pending before it and thus held that the Board erred in dismissing OPZ's appeal.

Prior to the enactment of the 1979 ordinance, and thus at

all times during which OPZ's appeal was pending before the Board, the law governing appeals to the Board was scattered among the State Code, the county charter, and the county code, and provided as follows:

(1) Md. Ann. Code art. 25A, § 5 (U) authorized the county, by local law, to create the Board of Appeals and to provide

"for the decision by the board on petition *by any interested person* ... of such of the following matters arising (either originally or on review of the action of an administrative officer or agency) under any law, ordinance, or regulation of ... the county council, as shall be specified from time to time by such local laws enacted under this subsection: An application for a zoning variation or exception or amendment of a zoning ordinance map. . . ." (Emphasis supplied.)

Section 5 (U) further provided (and still does provide) that any "person aggrieved by the decision of the board and a party to the proceeding before it" may appeal to the circuit court, and, if "aggrieved" by the decision there, may take further appeal to this Court. The section concludes with the statement that the "review proceedings provided [in it] shall be exclusive."

(2) Acting pursuant to this authority from the General Assembly, the county, through article VI of its charter, created the Board of Appeals (§ 601) and set forth its powers (§ 602) and procedures (§ 603). Section 602 confirms the Board's authority to review, *de novo,* decisions of the Zoning Hearing Officer, but neither it nor § 603 says anything directly about the interest one must have in order to bring an appeal to the Board. The charter deals with that in § 536, part of the subtitle relating to the Office of Zoning Hearings. Section 536 provides:

"Within thirty days after a decision of the Zoning Hearing Officer is rendered, any person or persons, jointly or severally, or any taxpayer or any official, office, department, corporation, board, or bureau of

Anne Arundel County *aggrieved by any decision of the Zoning Hearing Officer* shall have the right to appeal therefrom to the County Board of Appeals." (Emphasis supplied.)

(3) Three sections of the county code also bear directly on this subject. Section 13-359, being part of the "regular" zoning laws codified under Article VI ("Zoning Hearing Officer") and captioned "Appeals from orders of zoning hearing officer," repeats verbatim the provisions of § 536 of the charter. No change has been made in that section. Its counterpart in the "Alternate Zoning Regulations," § 13-340.10(a), was (and still is) essentially the same, although not identical. It provides:

"Within thirty (30) days of the decision of the zoning hearing officer, any person, firm, corporation or governmental agency having an interest therein *and aggrieved thereby* may file a notice of appeal with the county board of appeals, pursuant to article 25A of the Annotated Code of Maryland, and Article VI of the Charter of Anne Arundel County, Maryland (*and any ordinance, rules or regulations adopted pursuant thereto*)." (Emphasis supplied.)

Finally, there was § 2-200 (Rule 5), being part of article II (Board of Appeals), subtitle 2 (Rules of Practice and Procedure). Prior to the new ordinance, the relevant part of Rule 5 was nearly identical to § 536 of the charter and § 13-359 of the code. It expressly limited the right of appeal from the decision of the Zoning Hearing Officer to persons (and county officials and agencies) "aggrieved" by the Zoning Hearing Officer's decision.

What we have, therefore, is a State statute (§ 5 (U)), empowering the county to confer standing before the Board to "any interested person," but the actual conference of standing only to persons and agencies "aggrieved" by the lower administrative decision. The initial question then is whether, absent the new ordinance, OPZ was so "aggrieved,"

that being the applicable standard in effect at the time of the administrative proceedings.[3]

The condition of "aggrievement," of being "aggrieved," is a common prerequisite in the laws relating to administrative appeals, and particularly in zoning cases. The Court of Appeals first articulated some general standards or guidelines for determining who satisfies that condition (and who does not) in *Bryniarski v. Montgomery County,* 247 Md. 137 (1967). Though dealing there with the question of standing to appeal *from* a Board of Appeals rather than *to* it, the concepts are the same, it seems to us, in that the standard is still the requisite interest the would-be appellant must have in the decision he seeks to set aside. The Court noted, at p. 144:

> "Generally speaking, the decisions indicate that a person aggrieved by the decision of a board of zoning appeals [read here, zoning hearing officer] is one whose personal or property rights are adversely affected by the decision of the board. The decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specially affected in a way different from that suffered by the public generally."

Normally, in these cases, the appellant whose standing is questioned is a neighboring landowner. That was the situation in *Bryniarski,* and it was no doubt in that context that the Court set out some guidelines as to who is or is not "aggrieved": an "adjoining, confronting or nearby property owner" *is* aggrieved; a person whose property is "far removed" from the subject property is ordinarily *not*

---

**3.** Although our answer to this question is not directly determinative of this appeal, it is necessary to consider it for two reasons: first, if the answer were in the affirmative, the more thorny question of whether to apply the new ordinance would be moot, and to that extent, it is a prerequisite to our consideration of the second issue; second, it was raised below and on appeal and is therefore properly before us. It also bears indirectly on what we shall deem to be the dispositive issue.

aggrieved unless he can demonstrate that his "personal or property rights are specially and adversely affected . . . ." 247 Md. at 145.

The *Bryniarski* test or definition of "aggrievement" has been confirmed and applied many times by the Court of Appeals. *See, for example, Aubinoe v. Lewis,* 250 Md. 645 (1968); *Shore Acres Improvement Assoc., Inc. v. Anne Arundel County,* 251 Md. 310 (1968); *Wier v. Witney Land Co.,* 257 Md. 600 (1970); *also Grooms v. LaVale Zoning Board,* 27 Md. App. 266 (1975).

Appellant suggests that under *Bryniarski* it is necessary for the protestant to be a nearby property owner in order to have standing as an "aggrieved" person, and that such requirement applies equally to county agencies as it does to private individuals. Certainly, the basic equation is correct; as the statutes and ordinance (prior to the 1979 ordinance) are worded, county officials and agencies have no better or different inherent standing than do private individuals. But the underlying test is not so stringent. *Bryniarski* does not require the ownership of nearby property as the exclusive prerequisite. It also speaks of alternative "personal or property rights" that may provide an adequate interest in the proceeding.

What the cases have held, however, is that a public official, agency, or entity is not legally "aggrieved" by virtue of alternative personal or property rights merely because it has public duties and responsibilities of one sort or another, or because it represents the citizens of the subdivision. *See Greenbelt v. Jaeger,* 237 Md. 456 (1965); *Maryland-National Capital Park and Planning Comm. v. Rockville,* 269 Md. 240 (1973). In each of these cases, the Court concluded, directly or indirectly, that because the public agencies involved neither owned land near the subject property nor demonstrated a comparable special interest or damage, they were not (or would not have been) "aggrieved" by the zoning decision they sought to challenge, and thus did not have standing to pursue an administrative appeal from that decision.

It is conceded here that neither OPZ nor the county owns any property in sufficient proximity to the land in question to meet the more common and traditional test of aggrievement. The county relies instead on the fact that if the land is rezoned, OPZ will be required to make major revisions in the various master plans for which it is responsible. It is not suggested that the rezoning in question would significantly affect the health or welfare of the county or the basic integrity of the various master plans. Rather, it is asserted that *any change in zoning* means "that we have to go back to the drawing boards" in terms of demographic assumptions used in the plans.

That is clearly not the type of special interest, or personal or property right, required under the cases. The county is not static; the mere fact that a zoning change may require OPZ to review, or perhaps revise, some aspect of its master plan does not make it "aggrieved" by the change. *See,* in particular, *Maryland-National Capital Park and Planning Comm. v. Rockville, supra,* 269 Md. 240. Many people — public officials and private individuals — are put to extra work, or inconvenience, or even expense by zoning decisions; but that does not necessarily make them "aggrieved" in the legal and statutory sense. *Compare Peoples Counsel v. Williams,* 45 Md. App. 617 (1980).

Accordingly, we conclude that OPZ was not an "aggrieved" person and therefore, absent the 1979 ordinance, had no right of appeal to the Board from the action of the Zoning Hearing Officer.

The new ordinance, of course, sought to confer that authority. It amended § 2-200 (Rule 5) of the county code (but not § 13-359 or § 13-340.10 (a), much less § 536 of the county charter), by adding the following:

"The right of appeal is explicitly granted to the planning and zoning officer and is not limited to cases in which the county has an interest in the land subject to the decision of the zoning hearing officer. The planning and zoning officer, in his discretion, may appeal any decision of the zoning

hearing officer notwithstanding his lack of a personal or property right adversely affected by the decision of the zoning hearing officer." [4]

In considering the effect of this ordinance, we note initially that appellant has not challenged its basic validity — whether it conforms to the supervening requirements of either art. 25A, § 5 (U) or the county charter — and we shall therefore not address that question. Rather, we shall assume the validity of the ordinance and consider only its applicability.

In giving effect to the new ordinance, the trial court relied on one of the rules of construction pertaining to retroactivity stated in *Janda v. General Motors Corp.,* 237 Md. 161 (1964). Although pointing out that, absent an express legislative intent, statutes are not ordinarily applied retroactively, the Court held, at p. 169:

> "A statute which affects or controls a matter still in litigation when it became law will be applied by the court reviewing the case at the time the statute takes effect although it was not yet law when the decision appealed from was rendered, even if matters or claims of substance (not constitutionally protected), as distinguished from matters procedural or those affecting the remedy are involved, unless the Legislature intended the contrary."

*Janda* followed directly on the heels of *Yorkdale Corp. v. Powell,* 237 Md. 121 (1964), decided three days earlier. *Yorkdale,* a zoning case, applied the same principle, drawing upon earlier cases for the proposition that "an appellate court is bound to decide a case according to existing laws, even though a judgment rightful when rendered by the court below should be reversed as a consequence." *See* 237 Md. at 124, quoting from *Woman's Club v. State Tax Comm.,* 195 Md. 16, 19 (1950), in turn quoting from earlier cases.

---

4. By Bill No. 150-80, enacted October 22, 1980, the authority provided by the 1979 Ordinance was recodified without substantive change, as § 2-101 of the county code.

The statement of principle in *Janda,* despite some uneven application, appears to be still valid as an exception to the "widely recognized principle that the retroactive operation of a statute is disfavored." *State v. Johnson,* 285 Md. 339, 343 (1979), *and compare Attorney Grievance Comm. v. Klauber,* 284 Md. 306 (1979) and *State Comm. on Human Relations v. Amecom Div. of Litton Systems, Inc.,* 278 Md. 120 (1976).[5] The rationale sometimes stated for this exception is that, "provided no 'vested right' or contrary legislative intent is disturbed, it would be anomalous for a court to apply obsolete standards and issue a mandate that is inconsistent with current law." *Lucado v. State,* 40 Md. App. 25, 31 (1978). The principle is an inherently rational one, but it can occasionally lead to some very unusual, and facially illogical, results.

We have found no case involving quite the same circumstances as are now before us; they are certainly unusual, if not unique. But there are a number of cases from which we may seek guidance.

One such case is *United States v. Alabama,* 362 U.S. 602 (1960), in which the Government sued to restrain the State of Alabama and certain of its election officials from conspiring to deny black citizens their voting rights in violation of the Fifteenth Amendment and various civil rights statutes. The action against the State was dismissed by the U. S. District Court on the ground that the Government had no legal authority to bring it. The dismissal, on that ground, was affirmed by the U. S. Court of Appeals, but, on the Government's petition, the Supreme Court granted *certiorari.* While the case was pending in the Supreme Court, Congress passed the Civil Rights Act of 1960 which, among other things, specifically authorized such actions against a State. The Supreme Court, "[u]nder familiar principles," held that "the case must be decided on the basis of the law

---

5. There have been literally dozens of cases in which the Court has been faced with the question of whether to apply an intervening change in the law to a pending case. Some of the decisions are not easy to reconcile, and thus the diligent lawyer or judge can easily find some authority for both sides of the proposition.

now controlling," and thus concluded that the District Court then *did* have jurisdiction, even if it were lacking it before. 362 U.S. at 604. The Court therefore vacated the judgments that had been properly rendered under the law in effect at the time and remanded the case "with instructions to reinstate the action as to the State of Alabama . . . ."

The effect of the Court's decision in *United States v. Alabama* was essentially that which *Janda* would seem to require here — the "retroactive" conference of standing upon a plaintiff/appellant who did not have it when the action was commenced, and the consequent reinstatement of a case that had been quite properly dismissed because of the lack of standing current at the time. *See United States v. Fresno Unified School District,* 592 F.2d 1088 (9th Cir. 1979), *cert. denied,* 444 U.S. 837 (applying the concept in similar fashion to confer a "retroactive" standing on the Attorney General to bring employment discrimination actions against State and municipal public agencies), and *United States v. County of Hawaii,* 473 F. Supp. 261 (D. Hawaii 1979). *See also Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Comm.,* 580 F.2d 698 (D.C. Cir. 1978), and *Hospital Association of New York State, Inc. v. Toia,* 435 F. Supp. 819 (S.D.N.Y. 1977). *Compare, however, United States v. Board of Education, Garfield Heights,* 581 F.2d 791 (6th Cir. 1978).

This aspect of *Janda* (and its Federal equivalent) is generally viewed as involving the retroactive application of law, and the discussion of it is normally in that context. But that view is only partially accurate. *Janda* really involves an admixture of both retro- and pro-spectivity; and when seen in that light, some of the facially illogical results flowing from it become a bit easier to understand and accept. It involves retroactive application in the sense that the issue before the court is ultimately resolved on the basis of principles that were not in being, or were not controlling, at the time the action was commenced (or at the time the underlying transaction occurred). But to the extent that it merely requires the court to apply the law currently in effect

to a matter still before it, and thus not yet settled, the application is more in the nature of a prospective and current one.

Much of this, of course, is semantics. All of the discussion about retroactivity, of form or procedure versus substance, ultimately comes down to two things: (1) did the body that enacted the new law (whether legislative, executive/administrative, or judicial) give any clear indication as to whether or how it should be applied to pending matters, and (2) would it be basically unfair to so apply it? The Supreme Court made this clear in *Bradley v. School Board of Richmond,* 416 U.S. 696 (1974). It there considered the two countervailing views — one, that a new law is not to be applied in pending cases unless the law expressly says so, and the other, that such a law would be so applied unless there is a clear indication that it should not be. The Court opted for somewhat of a middle ground: "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711.[6]

The Court in *Bradley* did not define precisely what it meant by "manifest injustice," but noted that the matter centered on (1) the nature and identity of the parties, (2) the nature of their rights, and (3) the nature of the impact of the change in law upon those rights. Although the Maryland Court of Appeals has not, to date, expressly adopted the *Bradley* analysis (or even cited *Bradley*), still, since the basic doctrine applied there is precisely the same as that announced and applied in *Janda* and its predecessors, and because it makes eminently good sense, we think it is a relevant and useful standard by which to gauge our own State law.

---

6. In a later case, *Hamling v. United States,* 418 U.S. 87, 102 (1974), the Court stated the rule in much more summary fashion: "Our prior decisions establish a general rule that a change in the law occurring after a relevant event in a case will be given effect while the case is on direct review." In the context in which that statement appears, however, and especially as *Bradley* is cited as authority for it, we do not consider it a departure from the two conditions mentioned in *Bradley* — that such application would not result in manifest injustice or contravene clear legislative intent.

There is, of course, no clear statutory direction with respect to the ordinance before us. It took effect 45 days from enactment because that is what the county charter requires,[7] but it is absolutely silent as to its effect on pending cases. Nor does the record reveal any legislative history from which such a direction might fairly be inferred. Thus, under *Bradley,* there being no clear direction "to the contrary," in the absence of "manifest injustice," the ordinance should be applied.

The three criteria set forth in *Bradley* with respect to "manifest injustice" seem to imply, at least tacitly, that "manifest injustice" must be viewed in a more or less composite fashion, and not *solely* from the perspective of one party. A benefit conferred on one party by a new law is, at the same time, a benefit taken from the other. Thus, whatever the court does will inevitably favor one side or the other. To apply the new law is to favor the party whom the lawmaker desired to be favored; to refrain from applying it is to favor his adversary with a benefit that the law has sought to remove from him. Against that, however, the court must always consider and give special weight to the detrimental impact of removing the benefit/detriment of the old law—that which presumably guided the conduct of the parties — for at some point there lurk the protective constraints of due process. These considerations would seem to form the necessary linkage among the three criteria.

The new ordinance, if applied, interferes with no vested or Constitutional rights. It does not control, or even affect, the merits of appellant's zoning application. It would do nothing more than permit OPZ to have its day before the Board of Appeals. That, of course, is a detriment of sorts to appellant, who formerly was free from attack at the secondary level by OPZ; but it is not, in the grand scheme of things, all that significant a detriment. Appellant was not immune from all attack before the Board, only from those not satisfying

---

7. Section 307(i). Perhaps the one principle that is constant in all the Maryland cases is that the establishment of an effective date in accordance with the governing organic law has no bearing on whether the law should be applied to cases then pending. It is an entirely neutral circumstance.

the somewhat narrow, judicially-fashioned test of "aggrievement." The ordinance seeks to recognize that which the courts have not — the special, important, and legally mandated public responsibilities of OPZ and, because of those special duties, it purports to give that office the status of an "aggrieved" person. The essence of the ordinance, then, if applied in this case, is to give OPZ a right to speak in the protection of its plan, and to remove from appellant the right it had to be free of OPZ opposition at the Board of Appeals level. We cannot find this to be a manifest injustice.[8]

Appellant has also raised the issue of OPZ's right to appeal to the circuit court from the adverse decision of the Board of Appeals. Its position is that Bill 141-79 only confers a right of appeal to the Board, not from the Board to the circuit court. The simple answer to this argument is that the new ordinance is not needed to sustain OPZ's right to seek judicial review. Because of appellant's motion to dismiss, the only issue litigated before the Board was OPZ's "standing" as an appellant; the underlying zoning controversy was never directly addressed. In terms of the Board's adverse decision, then — that OPZ had no "standing" — OPZ *was* an "aggrieved" party and therefore entitled to appeal under Md. Ann. Code art. 25A, § 5 (U), county charter, § 604, and county code, § 2-102.

> *Judgment affirmed; appellant to pay the costs.*

**8.** By way of contrast, we note the case of *County Council v. Carl M. Freeman Associates, Inc.*, 281 Md. 70 (1977). In *Freeman*, the County Council for Prince George's County, sitting as the District Council for the Maryland-Washington Regional District in Prince George's County, approved a sectional map amendment by *resolution.* Freeman appealed that action to the circuit court and prevailed when the court concluded that Md. Ann. Code art. 66D, § 8-101 (b) (1957, 1970 Repl. Vol., 1976 Cum. Supp.) required the county to act by *ordinance* and not by *resolution.* On appeal, the Court of Appeals reversed the circuit court because between the time of the lower court's decision and the time of the appellate Court's Opinion, the General Assembly amended the statute to allow sectional map amendments to be made by resolution. Though the zoning map was invalidly adopted and was ineffective when Freeman obtained the circuit court decision, *Janda, supra,* required the retroactive validation of the resolution. Freeman's rights, it would seem, were far more significantly and detrimentally affected there than appellant's are here.