571 A.2d 1270

**COUNTY COMMISSIONERS OF CARROLL COUNTY, Maryland**

**v.**

**The ARUNDEL CORPORATION, et al.**

No. 1246, Sept. Term, 1989.

Court of Special Appeals of Maryland.

April 4, 1990.

Laurell E. Taylor, Asst. County Atty. for Carroll County (Charles W. Thompson, Jr., County Atty. for Carroll County, on the brief), Westminster, for appellant.

William B. Dulany (David K. Bowersox and Dulany, Parker & Scott, on the brief), Westminister, for appellees.

Argued before MOYLAN, BISHOP and GARRITY, JJ.

BISHOP, Judge.

The County Commissioners of Carroll County, Maryland (hereinafter appellant) appeals the decision of the Circuit Court for Carroll County reversing a Carroll County Board of Zoning Appeals' (Board) rejection of two applications for conditional use permits filed by The Arundel Corporation and Tidewater Quarries, Inc. (hereinafter appellees).

## ISSUE

Appellant asks whether the trial court erred in holding that a zoning text amendment specifying information to be submitted with certain conditional use applications, prior to

public hearings, does not apply to pending applications for conditional use permits.[1]

## FACTS

On August 17, 1987 counsel for Tidewater Quarries, Inc., one of the appellees, submitted to the Board an application to conduct quarrying or extractive-type industries on two parcels of land located within the County's "A" agricultural zoning district.[2] Appellee did not furnish plans or drawings indicating the present and proposed use for the site, proposed construction, or proposed site development as required. The Board notified appellee of the defects in its application and on February 5, 1988, after having received no response, advised appellee that if the defects were not cured by March 1, 1988 the application would become void.

On February 24, 1988 appellee Tidewater joined with appellee Arundel Corporation and submitted an "Amended Application" that deleted 106 acres from the originally proposed quarry site and included a narrative explanation of the nature of the request, an engineer's site plan and a topographic map of the site. On the same date appellees filed another application for a conditional use to quarry other properties within the agricultural district. Included within this subsequent application was the parcel deleted from the "Amended Application," some additional land, a narrative explanation of the nature of the request, an engineer's site plan and a topographic map of the site.

Prior to scheduling a public hearing on appellees' applications, appellant enacted Ordinance T–75 which amended the

---

1. Appellant also raises the issue of whether the subject zoning ordinance amendment is expressly or impliedly preempted by State law. In addition, appellees raise three issues by way of a cross-appeal. None of these issues were decided by the circuit court and we refuse to exercise our discretion to review them under Md.Rule 8–131.

2. Section 6.3(f) of the Carroll County Zoning Ordinance allows extractive-type industries in the agricultural district as a conditional use. A conditional use is the equivalent of a special exception.

Carroll County Zoning Ordinance. Section 3 of the amendment requires applications for conditional use permits to conduct extractive-type industries in the agricultural district to be accompanied by:

(a) A detailed site development plan for the proposed extractive operations indicating the following: location of extractive operations, topography, buffer areas, berms, landscaping plan, forested areas existing and/or proposed, if any, fences and fence heights, haul roads, buildings, structures, storage areas, off-street parking areas, exterior lighting plan indicating location, height and type of fixtures, storm water management structures, sediment and erosion control measures, line-of-sight and cross section studies showing where line-of-sight from surrounding properties will or will not be interrupted and any additional information which the petitioner believes appropriate.

(b) A copy of all necessary State permits or letters of certification from each State agency that it has completed its review of the proposed mining operations and is prepared to issue its permit, together with a copy of the documents on which such permits are or will be issued.

(c) A comprehensive hydrogeologic study incorporating geologic mapping, water budget analysis, aerial photography, test borings for subsurface exploration, photogeologic earth fracture analysis, pumping test methods and results conducted on borings, hydrogeologic data, description of data interpretations, and recommendations regarding protective methods to be employed to assure safe and environmentally acceptable operations and any additional information which petitioner believes appropriate.

(d) The approved land reclamation and restoration plan required by State law.

(e) A map of the proposed truck haul routes plan showing haul routes to the nearest major highway and traffic engineering studies and analysis demonstrating the effects of any proposed extractive-type industry on

present and projected road systems, bridges, and traffic safety conditions.

(f) A noise analysis and steps taken to control any noise generated by every aspect of the operation, including the noise reduction measures to be taken to reduce noise levels leaving the site and to conform those levels of noise to law.

(g) A description of dust control measures to be employed on site.

(h) Hours of operation.

(i) A description of environmental impacts and planned mitigation measures.

(j) Any additional information as may be required by the Planning Commission or the County Commissioners.

Ordinance T–75 was adopted on March 28, 1988 and by its own terms purported to become effective immediately. The executed ordinance was filed with the Clerk of the Court on May 31, 1988.[3]

The Board notified the appellees by letter of May 5, 1988 that it considered Ordinance T–75 applicable to the two pending applications and that, because the applications failed to comply with the ordinance, they were rejected. The Board reiterated its position in two letters to appellees dated June 10 and 24, 1988 making it clear that it considered such letters to constitute the "official and final decision in this matter."

The appellees appealed the decision of the Board to the Circuit Court for Carroll County. In their memoranda and at oral argument appellees contended that Ordinance T–75 is preempted by State law, is unconstitutionally vague and overbroad, the Board improperly applied the requirements

---

**3.** The trial court found the effective date of T–75 to be March 28, 1988 despite the delay in filing it with the clerk. We would agree, however, we refuse to address this matter for two reasons: (1) appellees disputed the court's holding in their response to appellant's brief but failed to raise the issue in their cross-appeal, and (2) our holding in this case renders any discussion about the effective date dictum because the ordinance shall be applied to the applications.

of T–75 and that the Board generally infringed upon their rights to due process by not processing the applications and failing to schedule hearings within a reasonable time. The court found only that Ordinance T–75 was improperly applied retroactively and made "no comment on the validity of Ordinance T–75." The court then remanded the matter to the Board with "instructions that it consider appellant's applications ... in accord with the Zoning Ordinance as its provisions ... existed on February 24, 1988." This timely appeal followed.

## DISCUSSION

Appellant argues that Ordinance T–75 applied to the pending applications for conditional use permits. Appellant contends that the ordinance is procedural in nature and, as such, may be applied retrospectively. In support of this contention appellant asserts that the information required to be supplied pursuant to the amended ordinance could have been requested by the Board under the previous enactment, and, retrospective application of T–75 would not deprive appellees of any vested right.

Appellees respond that Ordinance T–75 was not simply a procedural amendment to the Zoning Ordinance but also changed the substance of what an applicant must prove to obtain a conditional use permit for extractive-type industries and, as such, the ordinance may not be applied retrospectively.

The trial court found the following:

... [T]he Court views the Amendments contained in Section 3 of the Ordinance as substantial alterations of then-existing zoning law, significantly increasing the burden on Appellants. T–75 requires, among other things, a comprehensive hydrogeologic study, an approved land reclamation and restoration plan, a map of proposed truck haul routes, a noise analysis, a description of dust control measures, and "any additional information as may be required by the Planning Commission or the County Com-

missioners." No such requirements existed for Applications for these Conditional Uses under the County Zoning Ordinance as it existed prior to the adoption of Ordinance T-75, and to the Court's knowledge no similar requirements exist for Applications for other Conditional Uses.... The Court will therefore remand the matter to the Board with instructions that it consider Appellants' Applications for a Conditional Use in accord with the Zoning Ordinance as its provisions concerning conditional uses existed on February 24, 1988.

In so holding, the court relied on *Janda v. General Motors*, 237 Md. 161, 205 A.2d 228 (1964) as summarized in *Maryland Insurance Guaranty Association v. Muhl*, 66 Md.App. 359, 364–65, 504 A.2d 637 (1986):

In *Janda v. General Motors*, 237 Md. 161, 205 A.2d 228 (1964), the Court of Appeals set forth four principles for determining whether a statute is to be applied "retrospectively or prospectively":

(1) ordinarily, *"a change affecting procedure only, and not substantive rights ... applies to all actions ... whether accrued, pending or future, unless a contrary intention is expressed";*

(2) ordinarily, *"a statute affecting matters or rights of substance will not be given a retrospective operation as to transactions, matters and events not in litigation at the time the statute takes effect"* unless the Legislature expressly directs otherwise or unless its "manifest intention ... could not otherwise be gratified";

(3) even if the Legislature so intended, a statute *"will not be applied retrospectively to divest or adversely affect vested rights ...";* and

(4) a statute which "affects or controls a matter still in litigation when it became law will be applied by the court reviewing the case at the time the statute takes effect although it was not yet law when the decision appealed from was rendered, even if matters or claims of substance (not constitutionally protected), as distinguished from matters procedural or those affecting the remedy

are involved, unless the Legislature intended the contrary." *Id.,* 168–69, 205 A.2d 228. (Emphasis supplied.) We distilled the four principles enunciated in *Janda* as follows:

> Much of this, of course, is semantics. All of the discussion about retroactivity, of form or procedure versus substance, ultimately comes down to two things: (1) did the body that enacted the new law (whether legislative, executive/administrative, or judicial) give any clear indication as to whether or how it should be applied to pending matters, and (2) would it be basically unfair to so apply it?

*M.I.G.A. v. Muhl, supra* 66 Md.App. at 365, 504 A.2d 637, quoting from *T & R Joint Ventures v. Office, Planning & Zoning,* 47 Md.App. 395, 407, 424 A.2d 384 (1980).

In the case *sub judice,* we agree with the trial court's conclusion that there is "no clear articulation of legislative intent" as to whether or how Ordinance T–75 should be applied to pending matters. Where we disagree with the trial court is in its characterization of the amendment to the Zoning Ordinance as a substantive change in the zoning law. Section 3 of the ordinance purports to create a new Section, 14.43, under the title "DOCUMENTATION TO ACCOMPANY A PETITION FOR AN 'AE' DESIGNATION." The text of Section 3 details the information that must accompany an application for a conditional use to conduct extractive industries in the agricultural district. It specifically and exclusively addresses the process of applying. There is nothing to suggest a new standard will be applied by the Board when deciding to grant or deny an application. In addition, prior to the enactment of T–75 the Board had the obligation, under what is now Section 17.7[4]

---

4. **Sec. 17.7. Limitations, guides and standards.**
   Where in these regulations certain powers are conferred upon the Board or the approval of the Board is required before a conditional use may be issued, the Board shall study the specific property involved, as well as the neighborhood, and consider all testimony and data submitted. The application for a conditional use shall not

of the Zoning Ordinance, to obtain and consider the same evidence addressed in T–75. Therefore, we hold that Ordinance T–75 does not affect matters or rights of substance. It is a change in the Zoning Ordinance affecting procedure only, and, as such, may be applied to pending actions.

Appellees' argument that the changed ordinance must only be applied prospectively produces the same result as our holding that T–75 is procedural. In *Washington Suburban Sanitary Commission v. Riverdale Fire Co.*, 308 Md. 556, 565, 520 A.2d 1319 (1987) the fourth principle articulated in *Janda* was disapproved by the Court which held:

> We deal here with a state law. We are far from persuaded that the *Bradley* [5] analysis involves any greater precision in reasoning or produces a more predictable result than an analysis applying this Court's decisions in this troublesome area. The foregoing review

---

be approved where the Board finds the proposed use would adversely affect the public health, safety, security, morals or general welfare, or would result in dangerous traffic conditions, or would jeopardize the lives or property of people living in the neighborhood. In deciding such matters, the Board shall give consideration, among other things, to the following:

(a) The number of people residing or working in the immediate area concerned.

(b) The orderly growth of the community.

(c) Traffic conditions and facilities.

(d) The effect of the proposed use upon the peaceful enjoyment of people in their homes.

(e) The conservation of property values.

(f) The effect of odors, dust, gas, smoke, fumes, vibrations, glare and noise upon the use of surrounding property values.

(g) The most appropriate use of land and structures.

(h) The purpose of this Ordinance as set forth herein.

(i) Type and kind of structures in the vicinity where public gatherings may be held, such as schools, churches, and the like.

**5.** In *Bradley v. School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), a school desegregation case, the Court introduced an analytical model under which the retrospective-prospective issue may be approached. This Court has viewed the *Bradley* model as consistent with *Janda* and applied that analysis in *M.I.G.A. v. Muhl, supra* 66 Md.App. at 366, 504 A.2d 637 and *T & R Joint Ventures v. Office of Plan. & Zoning, supra* 47 Md.App. at 407, 424 A.2d 384.

demonstrates that under the law of Maryland statutes ordinarily are construed to operate prospectively, absent a clear legislative intent to the contrary. Further, when the General Assembly intends a statute to have a retrospective application, it knows how to express that intent. *Id.* 308 Md. at 568, 520 A.2d 1319. In the case *sub judice* there is no expression of intent to apply T–75 retrospectively. This does not matter, however, because application of Ordinance T–75 to appellees' petition would be prospective. No decision had been made as to whether a conditional use would be granted prior to enactment of T–75. Only a petition had been filed. Therefore, when it first came time to render a decision, the existing law was Ordinance T–75. Such law must be applied. *See Zengerle v. Bd. of County Commissioners for Frederick County*, 262 Md. 1, 22–23, 276 A.2d 646 (1971) (Where a zoning ordinance is amended, after the filing of an application but before decision, the law applicable is the ordinance as amended which is in existence when the Board makes its decision).

In any case, retroactive application of Ordinance T–75 would not be "basically unfair" as proscribed in *T & R Joint Ventures v. Office, Planning & Zoning, supra* 47 Md.App. at 407, 424 A.2d 384. Appellees knew about the proposed ordinance as early as November 16, 1987 when notice of a public hearing was published. They could have attended the public hearing, held on December 7, 1987, well in advance of their February 24, 1988 applications. Therefore, appellees knew what additional documents might be required to accompany their applications, pursuant to Ordinance T–75, in advance of its adoption. The trial court found that retroactive application would be unfair because the Board's seven month delay in granting to appellees a hearing was unreasonable and willful.[6] We disagree. We

---

6. The trial court's calculation of the Board's delay in granting a hearing is erroneous because it treats August 17, 1987 as an application date. Because the applications submitted on February 24, 1988 concerned different applicants than the original and the parcels affect-

hold the trial court committed error in determining that retroactive application would be unfair.

Finally, we note that retroactive application is never permitted to divest or adversely affect vested rights. *M.I. G.A. v. Muhl, supra* 66 Md.App. at 365, 504 A.2d 637. In the case *sub judice* appellees were applying for a conditional use. In *Colwell v. Howard County,* 31 Md.App. 8, 15, 354 A.2d 210, *cert. denied,* 278 Md. 719 (1976) we held that obtaining a building permit for a permitted use does not create a vested right insulated against a change in the zoning ordinance forbidding that particular use. *See also Ross v. Montgomery County,* 252 Md. 497, 504, 250 A.2d 635 (1969). Appellant acquired no vested rights by filing the petition. The filing of a petition for a conditional use does not "freeze" the law as of the date of filing. Here, no permit has been granted. The process did not progress beyond the application phase. Therefore, there could not have been a vested right which was adversely affected by denial of the application.

For the foregoing reasons we hold that the trial court committed error by finding that Ordinance T–75 Section (3) was a substantive change in the Carroll County Zoning Ordinance and that application of it to the pending petitions would be unfair. Because we so hold, we remand this case to the circuit court with directions to make findings concerning the validity of the ordinance in light of the preemption, vagueness and due process challenges argued by appellees.

JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.

---

ed were different, we will treat them as distinct, and in replacement of, the original.