## JANDA ET AL. *v.* GENERAL MOTORS CORPORATION ET AL.

[No. 99, September Term, 1964.]

*Decided December 7, 1964.*

The cause was argued before HAMMOND, PRESCOTT, MAR-BURY, SYBERT and OPPENHEIMER, JJ.

*Lowell Goerlich* and *Bernard G. Link* for the appellants.

*James N. Phillips, General Counsel, Department of Employment Security,* with whom were *Thomas B. Finan, Attorney General,* and *Bernard S. Melnicove, Special Assistant Attorney General,* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

The appellants are twenty-nine employees at a plant of the General Motors Corporation in Baltimore who were denied unemployment insurance benefits for a week in January 1963. The reason for the denials by the claims specialist of the Department of Employment Security of Maryland was that each claimant had received from the employer during the week in question "pay in lieu of vacation" under a written contract between the employer and the union to which the claimant belonged, and that this "vacation allowance" (in the words of the contract) constituted wages for benefit purposes under the Maryland Unemployment Insurance law, Code (1957-1963 Supp.), Art. 95A, Sec. 6 (i) (2).

Timely appeals were noted and on June 12, 1963, came on for hearing before the Board of Appeals which, on August 21 adopted the reasoning and affirmed the conclusions of the claims examiner. The employees appealed to the Superior Court of Baltimore City which followed the examiner and the Board.

On February 18, 1955, this Court, in *Allen v. Md. Emp. Security Board,* 206 Md. 316, held that where every eligible employee received a paid vacation which had to be taken under an employer-union contract (there being no option to continue to

work uninterruptedly and receive the usual wages and also vacation pay in lieu of a vacation), such an employee who received vacation pay during a lay off for lack of work was not unemployed for as long a period following the payment as it would have taken to earn customary wages equal to the amount of the payment and, therefore, was not entitled to receive unemployment compensation benefits under Code (1951), Art. 95A, Sec. 19 (1) which permitted a claimant to receive benefits as unemployed in any week "* * * during which he performs no services and with respect to which no wages are payable to him * * *."

The Legislature at its 1956 session did away with the holding in the *Allen* case. By Ch. 95 of the Laws of that year paragraph 9 was added to subsection (N) of Section 19 of Art. 95A of the Code (1951 Edition and 1955 Supplement) to provide in the words of the title that "* * * vacation pay under certain conditions shall not be considered as 'wages' in the administration of the Unemployment Compensation Law." See *Marquette Cement Manufacturing Co., et al. v. Willis Younkins, et al.* 237 Md. 116.

In 1961, following newspaper criticism of abuses in the unemployment compensation system, which were costly to the community and to the taxpayers in particular, the Legislature reacted by imposing various restrictions on the right of the unemployed worker to receive unemployment benefit payments. Ch. 883 of the Laws of 1961 (a) repealed Sec. 20 (N) (10) of Art. 95A of the Code (1957 Ed.) (which was the language added by the 1956 amendment as Sec. 19 (N) (9) of Art. 95A to exclude from the definition of "wages" the amount of "vacation pay earned or accumulated to the credit of the individual, paid or payable at the time of lay off or separation from employment"), and (b) added a new subsection 6 (i) to Art. 95A to provide a new disqualification, as follows:

"For any week with respect to which he is receiving, has received, or has filed, or is eligible to file a claim for remuneration in an amount equal to or in excess of his weekly benefit amount in the form of: * * * (2) vacation allowance (paid directly by the

employer or indirectly from a fund) ; such payments when paid at the time of, or during, a layoff or separation from employment shall be allocated to a number of weeks following the date of payment equal to the number of weeks' pay received * * *."

This amendment did not take effect June 1, 1961, as the act stated it was to do because proper petitions were timely filed to put Ch. 883 of the Laws of 1961 to referendum. The voters of Maryland approved the bill at the election of November 1962 and it became effective December 6, 1962. One hundred forty-five days later, on April 30, 1963, the Legislature passed as Ch. 729, House Bill 445, which as introduced on February 14, 1963, would have repealed Sec. 6 (i) of Art. 95A of the Code (which had been added in 1961 and taken effect on December 6, 1962) in toto. House Bill 445, however, was amended to repeal and reenact with amendments Sec. 6 (i) of Art. 95A to revise the disqualification for unemployment benefits where the claimant received dismissal payments or wages, or vacation allowances. As passed, Ch. 729 of the Laws of 1963, effective June 1, 1963, revised the provisions of the 1961 law as to vacation allowances, by adding the words italicized below, as follows :

"(2) Vacation allowance (paid directly by the employer or indirectly from a fund) ; such payments when paid at the time of, or during, a layoff or separation from employment shall be allocated to a number of weeks following the date of payment equal to the number of weeks' pay received; *excepting, however, such allowances as are paid by the employer pursuant to the provisions of and during the period of a written contract in effect on December 6, 1962, between such employer and a collective bargaining agent for such employee if it is not the normal practice of the employer to grant the employee time off with pay for vacation purposes during the year."*

The contract between General Motors and the employees' union was dated September 20, 1961, and ran for three years,

expiring August 31, 1964. The contract and the testimony of the Director of the Unemployment and Workmen's Compensation Personnel Staff of General Motors Corporation make it plain that the negotiations that preceded the execution of the contract did not include serious discussions as to actual paid vacations and that they were not a major issue in the collective bargaining. It is also plain that the ultimate issue was how much money, in the coin of the realm or the equivalent the employees would be paid, working fifty-two weeks each year, if that much work were available, and not vacations with pay. There is no doubt that, under the contract, every employee, eligible for the vacation allowance by reason of length of service would be entitled to it and be paid it as soon as possible after a specified semi-annual eligibility date "irrespective of any employment or unemployment" on the part of the employee. Paragraph 184 of the contract is headed "Vacation Pay Allowances" and provides that: "In lieu of vacation with pay, the vacation pay allowance provisions of this Section shall apply during the term of this agreement." There can be no doubt, to use the words of the 1963 statute, that it was not, during the times here pertinent, "the normal practice of the employer [General Motors Corporation] to grant the employee [each appellant] time off with pay for vacation purposes during the year."

The primary and pertinent issues on which the case turns, and on which the appellants and the Department of Employment Security differ diametrically now come clearly into focus. The appellants, the employees, first say that, to use the words of the contract, the pay "in lieu of vacation" received during a critical week by each appellant was not, within the meaning of the 1961 statute, a "vacation allowance." Second, they say, that even if it be assumed, or held, that such "pay in lieu of vacation" was a "vacation allowance" within the contemplation of the 1961 act, the language of the Legislature in the 1963 repeal and reenactment of the 1961 restriction — that such "allowances" paid by an employer "pursuant to a contract in effect on December 6, 1962" and so forth was intended to, and did, operate retrospectively and, therefore, was intended to, and did,

control and affect unemployment claims and rights occurring between December 6, 1962, and June 1, 1963.

The appellee, General Motors Corporation, in apparent recognition of the fact that for a number of years the unemployment benefits received by its employees have been far in excess of those necessary to require it to pay the maximum rate of unemployment taxes and because receipt of unemployment benefits by its employees tends to promote good employer-union relations, has not opposed the aims and positions of the appellants but apparently sympathizes with them. The other appellee, Department of Employment Security, says the 1961 act made receipt of pay in lieu of vacation a disqualification for benefits and that, in any event, the 1963 act was intended to and did operate prospectively and so affected and controlled only claims arising after June 1, 1963.

We think the legislative and judicial happenings which preceded the passage of the 1961 act and the language used in it by the Legislature reveal an intent to make receipt of vacation pay or allowance granted in lieu of a vacation with pay a disqualification for unemployment benefits. The *Allen* case held the law in effect in 1955 disqualified one from benefits even for a period during which he did not work if he received pay from his employer with respect to that period. The case clearly implied that if the money received by the employee during a period of separation from employment was not payable with respect to the week or weeks following the lay off but was a bonus or allowance earned because of service previously rendered, it was not then a disqualification. The inference the case suggested was that if the payments there involved had been for past services, without regard to a vacation, rather than, as they there were, money paid for a vacation which had been earned but not yet taken, the holding of the case would have been in favor of the workers.

To repair the damage the Legislature was persuaded to believe had been done to the unemployment compensation law by the *Allen* holding, Ch. 95 of the Laws of 1956 said only that "vacation pay" which was paid or payable at the time of separation from employment did not constitute a bar to benefits. It

found it unnecessary to, or, in any event, did not, deal with bonuses, pay, or allowances in lieu of vacations which under the clear implications of *Allen* were not such a bar. The reform bill of 1961 which became Ch. 883 of the Laws of that year used the broad language, "vacation allowance" either paid by the employer or "from a fund" in making such payments a disqualification and in terms required their allocation to the weeks following separation from work as if wages.

The term "vacation allowance" would appear to have been taken from representative employer-union contracts and used as a word of art to include vacation pay and payments in lieu of vacation. Certainly the directions that payments from a fund are to be included and that the payments are to be allocated "* * * to a number of weeks following separation from employment equal to the number of weeks pay received * * *" show that more than the pay for a vacation dealt with in *Allen* was included. Payments from a fund—such as a union fund—would not be vacation pay. Bonuses or payments in lieu of vacation would not be allocable to any period of time following their payment unless the Legislature directed they should be. The Contract of September 20, 1961, between General Motors Corporation and the Union entered into after the passage of the act of 1961 called the payments here involved "vacation pay allowances." We are persuaded that receipt of those payments by the appellants bars them from the unemployment benefits sought in this appeal unless the act of 1963 requires a different result.

Various rules have been formulated by the courts to aid in determining whether a statute is to be applied retrospectively or prospectively. (1) "Ordinarily a change affecting procedure only, and not substantive rights, made by statute (and an amendment of the Maryland Rules has essentially the same effect) applies to all actions [and matters] whether accrued, pending or future, unless a contrary intention is expressed." *Richardson v. Richardson,* 217 Md. 316, 320, and cases cited. (2) Ordinarily a statute affecting matters or rights of substance will not be given a retrospective operation as to transactions, matters and events not in litigation at the time the statute takes effect:

"* * * unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could not otherwise be gratified. * * * (citing cases). An amendatory Act takes effect, like any other legislative enactment, only from the time of its passage, and has no application to prior transactions, unless an intent to the contrary is expressed in the Act or clearly implied from its provisions." *Tax Comm. v. Power Company,* 182 Md. 111, 117.

(3) A statute, even if the Legislature so intended, will not be applied retrospectively to divest or adversely affect vested rights, to impair the obligation of contracts, or so as to violate the due process clause, or to operate as a bill of attainder or an *ex post facto* law. Aside from the disinclination of legislative bodies and courts to make a law operate on past events or transactions, the limitations on retroactive laws are only those which affect all legislation and, if the Legislature intends a law affecting substantive matters to operate retrospectively and the law does not offend constitutional limitations or restrictions, it will be given the effect intended. See 2 Sutherland, *Statutory Construction,* Sec. 2201 (3rd Ed. 1943), and *Match Co. v. State Tax Comm.,* 175 Md. 234. (4) A statute which affects or controls a matter still in litigation when it became law will be applied by the court reviewing the case at the time the statute takes effect although it was not yet law when the decision appealed from was rendered, even if matters or claims of substance (not constitutionally protected), as distinguished from matters procedural or those affecting the remedy are involved, unless the Legislature intended the contrary. See *Yorkdale Corp. v. Powell,* 237 Md. 121, and cases cited; see also *Day v. Day,* 22 Md. 530 (a patent to land covered by navigable waters, valid when issued by the Commissioner of the Land Office was made invalid by a law passed during the pendency of the appeal; the Court of Appeals held the law applicable and controlling and reversed the issuance of the patent); and *Gordy v. Prince,* 175 Md. 519, 688 (Court of Appeals held that income of regional manager

of the Homeowners Loan Corporation, a federal instrumentality, was exempt from state income tax. A motion for reargument was filed and was pending when the Supreme Court decided that a state could tax salaries of federal employees. The judgment appealed from, which had been affirmed by the Court of Appeals, was thereupon reversed).

The various categories of matters procedural or those concerning the remedy, and matters of substance, vested or accrued, or not vested or accrued, as well as rights protected by the due process clause, tend to overlap in many instances and are not always easy to accurately recognize or to delineate or define in a given instance. In the case before us it seems clear that the 1963 act did not deal with remedies or procedures and almost as clear that the matters, claims or rights of substance with which it did deal, in the way it did were not constitutionally protected against retrospective amendment, as vested or accrued, or otherwise.

The Declaration of Public Policy in Ch. 1 of the Extraordinary Session of December 1936 of the Legislature of Maryland, which was the original enactment of the unemployment compensation law, declares that economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of the State and that, in the exercise of the police power, the achievement of social security requires the compulsory setting aside from contributions by employers of reserves to be used for the benefit of persons unemployed through no fault of their own. The law was passed to supplement the federal Social Security Act. *Saunders v. Unemp. Comp. Board*, 188 Md. 677. The rights and benefits of employees are enlarged by the 1963 amendment, not adversely affected and no vested or accrued right or interest of an employer or taxpayer is wronged by it. The act did not disturb contract rights or obligations of employer or employee, it merely gave recognition to such rights and to the fact and legal theory that the contracts involved had been entered into in contemplation of the unemployment law. Our view that there is no constitutional barrier to giving retrospective application to the 1963 amendment is fortified by the scores of decisions, federal and state, which ruled on the act of Congress (The Portal-to-Portal Act of

1947) which retroactively barred back claims for portal-to-portal pay, which were widely asserted throughout the land after the Supreme Court had interpreted the Fair Labor Standards Act to require such pay. The cases unanimously upheld the constitutionality and legality of the retroactive provisions of the Act in the face of assertions that it unconstitutionally impaired the obligation of contracts, affronted the due process clause and took property without just compensation, or otherwise disturbed vested rights and, in a number of cases, the Supreme Court denied certiorari. See, for example, *Seese v. Bethlehem Steel Co.* (4th Cir.), 168 F. 2d 58; *Fisch v. General Motors Corporation* (6th Cir.), 169 F. 2d 266, and also cases collected in annotation "Portal-to-Portal Act," 3 A. L. R. 2d 1097, 1109-1114. *Cf. Match Co. v. State Tax Comm., supra.*

Many of the reasons that led us to conclude that the Legislature intended in 1961 to make extra pay in lieu of vacation a bar to benefits lead us to conclude that the 1963 act operates to remove that bar where the allowance in lieu of vacation is paid by the employer under and during the term of a written contract in effect on December 6, 1962, and the "normal practice" of the employer was not to grant a vacation with pay. December 6, 1962, was the day the 1961 act first took effect (it having been in suspended animation since June 1, 1961, its stated effective date, because it had been put to referendum). Prior to that day extra pay in lieu of vacation had not been a bar to benefits. We think the 1963 Legislature, by expressly making December 6, 1962, the critical date, manifested a clear and unmistakable intent that extra pay allowances in lieu of vacation, paid under a contract in force on that day, should continue not to be a disqualification for unemployment benefits so long as the contract then currently in force continued, whether or not the time of separation from employment came before June 1, 1963, the effective date of the 1963 act. The remedial purposes of the unemployment act to alleviate the menace to the health, morals and welfare of the people of the State would not best be served by the somewhat incongruous result which would follow if the 1963 act was not intended to let vacation allowances in lieu of vacation, paid pursuant to a contract, continue uninterruptedly in the same status. If the 1963 act be not

read retrospectively, all claimants paid such allowances under a contract specified in the act would be qualified for benefits only if such allowances were paid before December 6, 1962, or after June 1, 1963, and those paid between the two dates would be disqualified. We do not believe such a result was intended.

Further, the Board of Appeals of the Department of Employment Security heard the cases of the appellants on June 12, 1963, eleven days after the 1963 act had gone into effect. The Board should have applied the law as it stood when the case was heard and decided. See *Ziffrin v. United States,* 318 U. S. 73, 78, 87 L. Ed. 621 (Supreme Court held that since "a change in the law between a nisi prius and an appellate decision requires the appellate court to apply the changed law," a change in the law as to motor carrier permits which became effective after the application to and the hearing before the Commission but before its decision must be followed by the Commission) ; *Burlington Truck Lines v. United States,* 371 U. S. 156, 9 L. Ed. 2d 207 (a change in the law applicable to an administrative application which became effective administrative law four months after the Commission decided a case and before the District Court heard the appeal, required the reviewing court to remand for consideration in light of the change in the law) ; *Yorkdale v. Powell, supra; Beechwood Coal Co. v. Lucas,* 215 Md. 248; and *Thomas v. Penna. R. Co.,* 162 Md. 509.

The appellants are entitled to the unemployment benefits they have sought in this appeal.

> *Orders appealed from reversed, with costs, and case remanded for further proceedings not inconsistent with this opinion.*