MARQUETTE CEMENT MANUFACTURING COMPANY AND MARYLAND DEPARTMENT OF EMPLOYMENT SECURITY *v.* YOUNKINS AND KELLER

[No. 138, September Term, 1964.]

*Decided December 7, 1964.*

The cause was argued before Henderson, C. J., and Hammond, Prescott, Marbury and Oppenheimer, JJ.

*Lynn F. Meyers,* with whom were *John Wagaman and Wagaman, Wagaman & Meyers,* on the brief, for Marquette Cement Manufacturing Company, one of the appellants.

*James N. Phillips, General Counsel for Department of Employment Security,* with whom were *Thomas B. Finan, Attorney General,* and *Bernard S. Melnicove, Assistant Attorney General,* on the brief, for Maryland Department of Employment Security, other appellant.

*Michael F. Walsh,* with whom were *Bernard N. Katz* and *Meranze, Katz, Spear & Bielitsky,* and *James F. Strine,* on the brief, for appellees.

Henderson, C. J., delivered the opinion of the Court.

This appeal is from an order reversing a decision of the Board of Appeals of the Maryland Department of Employment Se-

curity. The Board had held that vacation payments made to the appellees by their employer, Marquette, constituted wages, and hence that they were not entitled to unemployment benefits for the two weeks in issue.

The facts have been stipulated and may be briefly stated. The plant was closed from February 11, 1962, to March 18, 1962, and the 216 cement production employees, including the appellees, did not work. The shutdown was due to a decline in sales and a lack of storage facilities, and the necessity of reducing inventories. In the applicable labor-management contract, executed by the Company and the appellees' union, it was provided that "the management shall designate the vacation period and the number of men on vacation at one time." A supplemental agreement dealt with vacations to be given generally, and it covered the case where "it becomes necessary to shut down the operation of a plant, due to business conditions." Each of the appellees was entitled, by reason of seniority and hourly rate of pay, to three weeks of vacation, and in accordance with the terms of the contract and supplemental agreement, the work weeks ending February 17, 1962, and February 24, 1962, were designated by the company as their vacation periods. Payments were duly made for those periods, but the appellees filed claims for unemployment benefits as well.

Code (1957), Art. 95 A, sec. 20, under the sub-title "Definitions", provides in part:

> "As used in this Article, unless the context clearly requires otherwise: * * *
>
> "(1) 'Unemployment'. An individual shall be deemed 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him * * *.
>
> "(n) Wages means all remuneration for personal services * * *; provided that the term 'wages' shall not include: * * *
>
> "(10) Vacation pay earned or accumulated to the credit of the individual, paid or payable at the time of lay-off or separation from employment." [1]

---

1. This subsection (10) was repealed by Chapter 883, Acts of

It is agreed by both sides that the clause is applicable in the instant case.

The Department of Employment Security adopted a regulation in 1961 covering vacation pay, in which it sought to minimize the effect of section (n)(10) by providing that vacation pay should not constitute wages if "paid at a time when the employment relationship is actually severed or at a time when the individual, in fact, is not employed by the employer paying the vacation pay." In effect, this language would imply that, if the employment relationship continues, vacation pay would be wages.

Subsection (n)(10) was unquestionably adopted to reverse our decision in *Allen v. Maryland Employment Security Board*, 206 Md. 316. In that case Judge Hammond, for the Court, said (p. 318): "It is agreed, entirely correctly we think, that the employees performed no services for the employer after they were laid off, and that vacation pay is wages within the meaning of the statute. The decisive question is whether money paid to the employees was payable with respect to the week or weeks immediately following the lay-off, or whether it was a bonus for services rendered during the preceding year." We held it was not a bonus, and hence the recipients were employed and not entitled to unemployment compensation.

The appellants argue that the amendment was designed to cover only the case of a lump sum, undesignated payment. We cannot so limit the effect of the plain language of the amendment. By definition, vacation payments are not wages, when they are earned or accumulated and paid or payable at the time of the lay-off. Hence the individuals in the instant case were to be considered as unemployed during those weeks when they performed no services and received no wages. Even if we draw the implication sought to be drawn from the Regulation in question, we think it cannot alter the plain words of the Statute. Cf. *Comptroller v. Rockhill, Inc.*, 205 Md. 226, 233, and *Comp-*

---

1961, to take effect on June 1, 1961. Its effective date was stayed by referendum and it did not take effect until 30 days after its ratification on November 6, 1962. See Maryland Constitution, Article XVI, sec. 2.

*troller v. Pittsburgh-Des Moines Steel Co.,* 231 Md. 132, 145. We find nothing in the labor-management contract or supplemental agreement to alter the effect of the Statute. That agreement simply established a vacation policy and an order of eligibility. The clause providing that to be eligible for a vacation the employee must be "in the active service of the Company at the time the vacation is taken," does not purport to deal with the crucial question as to whether vacation pay should be treated as wages. The agreement must be read in the light of the statute. Nor do we find anything in the out-of-state cases cited by the appellants to control our decision here, where we are dealing with a statute that is not fairly open to construction.

*Order affirmed, with costs.*