*Maxwell Dundore v. State of Maryland*, No. 798, September Term, 2023, filed June 26, 2024.  Opinion by Beachley, J.

**CRIMINAL LAW – STATUTE OF LIMITATIONS – EMERGENCY TOLLING**


**Facts**:  The State indicted Maxwell Dundore on July 15, 2021, charging him with second-degree assault related to an incident which occurred on April 27, 2020.  Mr. Dundore moved to dismiss the second-degree assault charge based on the State's failure to file the charge within the one-year statute of limitations period.  The Circuit Court for Baltimore City denied Mr. Dundore's motion based on Chief Judge Barbera's administrative orders tolling statutes of limitations during the COVID-19 pandemic.  After a bench trial, the court found Mr. Dundore guilty of second-degree assault.  Mr. Dundore then appealed.

**Held:**  Affirmed.

The Appellate Court reviewed the history of the emergency tolling orders issued by the Chief Judge during the COVID-19 pandemic, and the analysis of those orders in *Murphy v. Liberty Mut. Ins. Co.*, 478 Md. 333 (2022).  Consistent with *Murphy*, the Court held that the orders applied to both criminal and civil cases.  The Court rejected Mr. Dundore's argument that because criminal statutes of limitations are "substantive, not procedural," the administrative tolling orders were unconstitutional as applied to criminal cases.  The Appellate Court held that *Murphy*'s reasoning is equally applicable to civil and criminal proceedings. Because COVID-19 affected civil and criminal cases in similar ways, the Court concluded that there was no reason to differentiate them with regard to the emergency tolling orders.  In summary, the Court held that the Chief Judge did not violate Article IV, § 18 of the Maryland Constitution by tolling criminal statutes of limitations for the amount of time courts were closed during the COVID-19 pandemic.

Circuit Court for Baltimore City
Case No. 121196009

MAXWELL DUNDORE

v.

STATE OF MARYLAND

Berger,
Nazarian,
Beachley,

JJ.

Opinion by Beachley, J.

Filed: June 26, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

In *Murphy v. Liberty Mut. Ins. Co.*, 478 Md. 333 (2022), the Supreme Court of Maryland held that Chief Judge Barbera[1]

> acted within her authority when, in her capacity as administrative head of the Maryland Judiciary, she issued the administrative tolling order concerning the timeliness of complaints filed in Maryland courts during the pandemic. Specifically, the administrative order was based on the authority of the Chief Judge under the Maryland Constitution, the Maryland Code, and the Maryland Rules.

*Id.* at 340. In this appeal, appellant Maxwell Dundore asks us to determine whether the holding in *Murphy* applies to criminal statutes of limitations. Specifically, Mr. Dundore presents the following question for our review:

> Did the circuit court err in denying Mr. Dundore's motion to dismiss the second-degree assault charge because the Supreme Court of Maryland does not have the authority to toll statutes of limitations in criminal charges?

We discern no error and shall affirm Mr. Dundore's conviction for second-degree assault.

## BACKGROUND

Because the sole issue in this appeal is whether the Supreme Court of Maryland had the authority to toll criminal statutes of limitations, we shall provide only a brief recitation of the relevant facts. Mr. Dundore is a former Baltimore City Police Officer. On April 27, 2020, he assisted in the arrest of an individual who was seen driving a stolen vehicle. The court ultimately found that, during the course of the arrest, Mr. Dundore inappropriately

---

[1] During the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the "Court of Appeals of Maryland" to the "Supreme Court of Maryland," and changing the title of the "Chief Judge" to "Chief Justice." Because these changes did not go into effect until December 14, 2022, we use the title "Chief Judge" where appropriate.

"mush[ed]" the suspect's face, and threatened the suspect, yelling "I will choke you, I will kill you."

The State indicted Mr. Dundore on July 15, 2021, charging him with second-degree assault and misconduct in office. Mr. Dundore moved to dismiss the second-degree assault charge based on the State's failure to file the criminal charges within the one-year statute of limitations applicable to second-degree assault.[2] Specifically, Mr. Dundore argued that the administrative orders tolling criminal statutes of limitations due to the COVID-19 pandemic exceeded the Supreme Court's authority under Article IV, § 18 of the Maryland Constitution. Immediately before trial, the Circuit Court for Baltimore City denied Mr. Dundore's motion.

After a bench trial, the court convicted Mr. Dundore of second-degree assault and misconduct in office. The court imposed an 18-month suspended sentence for each charge, placing Mr. Dundore on probation for 18 months. Mr. Dundore then noted this timely appeal.

## DISCUSSION

### I.  The COVID-19 Administrative Orders

When the COVID-19 pandemic gained a foothold in Maryland in March 2020, Chief Judge Barbera issued a series of administrative orders that sought to balance the need to protect the public health and the need to continue the operations of the Judiciary to the

---

[2] Mr. Dundore was also convicted of misconduct in office. Because that offense has a two-year statute of limitations, he does not challenge the misconduct conviction on appeal.

extent possible. *Murphy*, 478 Md. at 355-62. The first administrative orders, issued on

March 12, 2020, suspended jury trials and non-essential matters. *Id.* at 355-56. Shortly

thereafter, Chief Judge Barbera issued an administrative order closing the courts to the

public, effective March 17, 2020.[3] *Id.* at 357-58. That order

> noted the safety measures that the courts had taken thus far and found that there was "a threat of imminent and potentially lethal harm to vulnerable individuals who may come into contact with a . . . judicial facility and personnel" and that "[f]urther rapid escalation of the emergency requires more comprehensive measures to protect the health and safety of Maryland residents and Judiciary personnel." Citing the new emergency rules, the Chief Judge ordered that the courts, offices, and units in the Maryland Judiciary, and the offices of the clerks of the circuit courts and the District Court, "shall be restricted to emergency operations and closed with limited exceptions as described in this order beginning on March 17, 2020, through April 3, 2020, or until further order of the Chief Judge . . . ." The order specified that MDEC—the Judiciary's electronic case management system—"continues to be available for electronic filing and is required to be used for all MDEC counties." Regarding "pleadings not required to be filed electronically," the order provided that "filings will be received by mail and may be received via drop boxes installed at local courthouses." The order further specified that "[o]ther than as set forth in this Administrative Order, deadlines established by Maryland statutes or rules remain in effect[.]"

*Id.* at 358 (alterations in original) (footnote omitted). Among the matters required to

"continue to be scheduled or heard, either in person or remotely," were "bail reviews/bench

warrants," "arraignments for detained defendants," "initial appearances" before District

Court Commissioners, and "applications for statement of charges[.]" Administrative Order

---

[3] Administrative Order on Statewide Judiciary Restricted Operations Due to the COVID-19 Emergency (March 16, 2020), available at https://mdcourts.gov/sites/default/files/admin-orders-archive/20200316restrictedoperationsduetocovid19.pdf (https://perma.cc/F8S6-G5CS).

3

on Statewide Judiciary Restricted Operations Due to the COVID-19 Emergency (March 16, 2020).

At the same time, the Supreme Court adopted a set of rules, Rules 16-1001-1003, that "delegated to the Chief Judge a conditional authority to extend deadlines" in certain emergency situations.[4] *Murphy*, 478 Md. at 357. Specifically, Rule 16-1003(a)(7) authorized the Chief Judge to

> suspend, toll, extend, or otherwise grant relief from time deadlines, requirements, or expirations otherwise imposed by applicable statutes, Rules, or court orders, including deadlines for appeals or other filings, deadlines for filing or conducting judicial proceedings, and the expiration of injunctive, restraining, protective, or other orders that otherwise would expire, where there is no practical ability of a party subject to such deadline, requirement, or expiration to comply with the deadline or requirement or seek other relief[.]

On April 3, 2020, Chief Judge Barbera issued the first administrative order tolling statutes of limitations. *Murphy*, 478 Md. at 358-59. That order provided that "all statutory and rules deadlines related to the initiation of matters required to be filed in a Maryland state court, including statutes of limitations, shall be tolled or suspended, as applicable, effective March 16, 2020, by the number of days that the courts are closed to the public[.]" *Id.* at 359. The termination date of the tolling period was to be announced in a subsequent order. *Id.* A separate administrative order issued on April 3 provided that, subject to limited exceptions, "[a]ll grand juries shall be suspended until further notice[.]" Administrative Order Expanding Statewide Suspension of Jury Trials and Suspending

---

[4] This action was consistent with the Governor's March 12, 2020 order that granted authority to heads of the units of State and local governments to extend deadlines related to those agencies. *Murphy*, 478 Md. at 357.

4

Grand Juries (April 3, 2020), available at https://mdlaw.ptfs.com/awweb/ pdfopener?md=1&did=29723 (https://perma.cc/HE33-YL9N). On April 24, 2020, Chief Judge Barbera issued another order, which included a "provision explaining that the tolling provision applied regardless of whether a party made a specific showing of hardship as a result of the pandemic." *Murphy*, 478 Md. at 360. The reasons given in the introductory "whereas" clauses in the April orders for tolling statutes of limitations included: (1) the need for "comprehensive measures to protect the health and safety of Maryland residents and Judiciary personnel"; (2) "the stay-at-home orders issued by the Governor and restricted operations of the courts and judicial facilities" creating "delays in the processing of routine matters," and "a widespread detrimental impact upon the administration of justice, impeding the ability of parties and potential litigants to meet with counsel, conduct research, gather evidence, and prepare complaints, pleadings, and responses"; and (3) the pandemic's "widespread" impact, creating "a general and pervasive practical inability for certain deadlines to be met." *Id.* at 359-60; Amended Administrative Order Clarifying the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters (April 24, 2020), https://mdlaw.ptfs.com/awweb/ pdfopener?md=1&did=29765 (https://perma.cc/EC9H-RY8U).

Pursuant to a May 22, 2020 administrative order, courts were to reopen to the public on July 20, 2020, and that date was designated as the end of the tolling period. *Murphy*, 478 Md. at 361-62. In addition to the 126 days of tolling, "[t]he May 22 order further extended the filing deadlines for the initiation of matters by an additional 15 days past the

date on which the clerks' office reopened[.]" *Id.* at 362.  When jury trials resumed on October 5, 2020, Chief Judge Barbera ordered that priority in scheduling should be given to "criminal trials and other urgent actions."  Amended Administrative Order Lifting the Statewide Suspension of Jury Trials and Resuming Grand Juries (June 3, 2020), available at https://mdlaw.ptfs.com/awweb/pdfopener?md=1&did=29861 (https://perma.cc/BJ38-97SH).  Additional administrative orders continued to be issued revising prior orders until March 28, 2022, when the Chief Judge announced the termination of COVID-19 emergency operations effective April 3, 2022.  *Murphy*, 478 Md. at 362.

II.      *Murphy v. Liberty Mutual Insurance Co.*

In *Murphy*, the Supreme Court considered the constitutionality of the administrative orders tolling statutes of limitations, specifically within the context of civil matters.  478 Md. at 366.  The Court made the following comments related to the Chief Judge's authority under Article IV, § 18 of the Maryland Constitution:[5]

> The administrative tolling order issued on April 24, 2020 was based on explicit authority provided by Maryland Rule 16-1003(a)(7) for the Chief Judge to "suspend, toll, extend, or otherwise grant relief from time deadlines . . . otherwise imposed by applicable statutes . . . ."  The Chief Judge's authority to take such action is triggered under Maryland Rule 16-1001 when the Governor declares a state of emergency—as the Governor had done in

---

[5] Article IV, § 18(a) provides:

The Supreme Court of Maryland from time to time shall adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State, which shall have the force of law until rescinded, changed or modified by the Supreme Court of Maryland or otherwise by law.  The power of courts other than the Supreme Court of Maryland to make rules of practice and procedure, or administrative rules, shall be subject to the rules and regulations adopted by the Supreme Court of Maryland or otherwise by law.

6

March 2020 prior to the issuance of the administrative tolling order. Those rules were adopted by the [Supreme Court], pursuant to the Court's rulemaking authority in Article IV, § 18(a) of the Maryland Constitution after notice and a public hearing, albeit on a short timetable due to the pandemic emergency. There is no contention that the adoption of the rules was procedurally deficient.

The administrative tolling order also invoked Article IV, § 18 of the Maryland Constitution and alluded to the Chief Judge's role as the "administrative head" of the Maryland judicial system. The order was based in part on the Chief Judge's administrative responsibility to ensure that the courts were available to discharge their constitutional duty to adjudicate disputes. As the recitals in the administrative order indicate, at the time the order was issued in the spring of 2020, the pandemic had disrupted access to the courts and the ability of the State Judiciary to operate effectively. In particular, the Chief Judge found that the measures the Judiciary had taken to respond to that emergency, in compliance with directives of the Governor and guidance from the federal Centers for Disease Control and Prevention, had had a "detrimental impact" that "imped[ed] the ability of parties and potential litigants to meet with counsel, conduct research, gather evidence, and prepare complaints, pleadings, and responses." As a result, there was a "general and pervasive practical inability" to meet certain deadlines. Moreover, the Chief Judge found that the pandemic had affected not only the ability of litigants to file pleadings—a problem addressed at least in part by drop boxes and MDEC—but also the ability to prepare them in the first place.

In setting the amount of additional time that would be allowed for the "initiation of matters," section (a) of the order stated that the tolling period would run from March 16, 2020—the date on which access to clerks' offices was first restricted—and consist of "the number of days that the courts are closed to the public due to the COVID-19 emergency." A later administrative order set the end date of the tolling period as July 20, 2020, once the courts had been reopened. Accordingly, the tolling period was explicitly tied to the period that the courts were closed to the public.

*Id.* at 368-69 (first, second, and fourth alterations in original) (footnotes omitted) (citations omitted). The Court concluded that there "was ample and explicit authority under Article IV of the State Constitution and the Maryland Rules for the Chief Judge to issue the administrative tolling order." *Id.* at 369.

7

The Court proceeded to consider whether the administrative orders violated Articles 8 or 9 of the Maryland Declaration of Rights.[6] In discussing whether the orders violated the separation of powers provision set forth in Article 8 of the Maryland Declaration of Rights, the Court noted that Maryland courts have "long acknowledged that the 'respective powers of the legislative, executive and judicial branches of government are not wholly separate and unmixed[.]'" *Id.* at 370 (quoting *Crane v. Meginnis*, 1 G. & J. 463, 476 (1829)). Rather, the separation of powers concept "accommodates the fact that, in addition to the specific powers and functions that the Constitution expressly grants to the three branches of government, each branch must as a practical matter 'possess[] additional powers perforce implied from the right and obligation to perform its constitutional duties.'" *Id.* at 371-72 (alteration in original) (quoting *Attorney General v. Waldron*, 289 Md. 683, 690-91 (1981)). "Accordingly, instead of interpreting Article 8 in a 'literal sense,' the Court has read it to 'preserve to the one branch of government its *essential* functions' and to 'prohibit any other branch from interfering with or usurping those functions.'" *Id.* at 372 (quoting *McCulloch v. Glendening*, 347 Md. 272, 283-84 (1997)).

Contrasting *Consol. Constr. Servs., Inc. v. Simpson*, 372 Md. 434 (2002), which held that the Supreme Court "had exceeded its power and had encroached on the General Assembly's legislative power by adopting a rule that added a substantive element to attachment and garnishment proceedings[,]" the *Murphy* Court noted that "[a] statute of

---

[6] The Court concluded that the administrative orders did not violate Article 9's prohibition against the suspension of laws. *Id.* at 382-85. Mr. Dundore makes no Article 9 claim.

8

limitations . . . neither creates a right of action nor pertains to the merits of a cause of action; rather, it regulates the plaintiff's exercise of that right." *Murphy*, 478 Md. at 375. Therefore, tolling a statute of limitations "falls within the field of procedural matters in which the Court may play a role." *Id.* at 376. The Court further discussed Rule 2-101(b), which "tolls the statute of limitations for filing in a Maryland court for a plaintiff whose lawsuit was initially filed in federal court or a court of another state, but dismissed in that forum on jurisdictional or certain other grounds[,]" and other "judicially-created doctrines that extend the deadline for filing suit[,]" concluding that these examples "illustrate[] that 'practice and procedure' may include generally-applicable measures to ensure that the courts' procedures are fair to litigants." *Id.* That the General Assembly also has the "authority to enact legislation on the subject of tolling does not deprive the Judicial Branch of its constitutional authority to adopt rules that regulate the method by which litigants exercise a right of action." *Id.* at 377. The *Murphy* Court concluded that the Chief Judge's administrative orders did not violate Article 8's rulemaking powers related to "practice and procedure":

> The Court's adoption of rules providing for the tolling of the statute of limitations in the event of an emergency fell within the Court's constitutional authority to adopt rules of practice and procedure. It is also evident that the tolling order itself did not usurp powers belonging solely to another branch.

*Id.* at 379.

The *Murphy* Court then considered the "second category" of Article 8 cases that "address the validity of a rule or other Judiciary action regarding the administration of the courts[.]" *Id.* at 380. Again, the Court saw no violation of Article 8:

9

Both the administrative tolling order and the emergency rules fell within the administrative powers assigned to the Judicial Branch. As noted above, the Chief Judge's April 24, 2020 order stated the comprehensive impact that the pandemic-related restrictions, including the Governor's stay-at-home orders and the restricted operations of the courts, were having on logistical matters such as the processing of routine matters and the ability of parties and potential litigants to meet with counsel, conduct research, and prepare pleadings. Under those emergency circumstances, the Chief Judge's order was within her authority as administrative head of the Courts.

*Id.* at 381.

Having considered both the "practice and procedure" and "administration of the courts" components of Article 8, the Court concluded:

The Chief Judge's April 24, 2020 administrative tolling order did not usurp the Legislative Branch's powers. The rules on which that order was based fell within the Court's "practice and procedure" and administrative functions under the Maryland Constitution. The order was not an expression of a Judicial policy preference for a period of limitations different from that set by the Legislature. Rather, in a sense, it was an effort to respect the period of limitations set by the General Assembly by ensuring that the administrative obstacles faced by litigants and the courts during the early days of the pandemic did not effectively and retroactively shorten the period of limitations in those cases in which the period would expire while the courts were closed. Thus, while an order tolling a statute of limitations would not ordinarily be an administrative matter, in this instance there were good grounds for treating it as such. Given the Court's role regarding the procedural aspects of the statute of limitations, and given the Judiciary's coordination with the Executive Branch with regard to the pandemic response, the rule and order also did not encroach upon the Executive Branch's emergency powers.

*Id.* at 382. Against this backdrop, we turn to the instant case.

III.    Arguments of the Parties

Recognizing that *Murphy* presents an obstacle in his path to success on appeal, Mr. Dundore points out that the *Murphy* Court limited the breadth of its decision by noting "that the Chief Judge's administrative orders for criminal matters and other deadlines are

10

not at issue in this matter." *Id.* at 366, n.40. Thus, while Mr. Dundore concedes that the Chief Judge had the authority under her "practice and procedure" and "administration of the courts" constitutional powers to toll or suspend limitations in civil cases, he contends the Chief Judge lacked the authority to alter criminal statutes of limitations because they are substantive in nature. In support of his argument, Mr. Dundore relies heavily on statements in *State v. Michael*, 2 Md. App. 750, 755 (1968), that criminal statutes of limitations are "substantive and not procedural." He further argues that tolling criminal statutes of limitations would not have been necessary due to COVID-19's comparatively "minimal" impact on criminal cases.

The State understandably bases its argument on *Murphy*, noting that the Supreme Court "concluded that the tolling orders were an appropriate exercise of the Judicial rulemaking authority over both 'practice and procedure' and over the administration of the courts." (Citations omitted). Although the State acknowledges that *Murphy* answered a certified question concerning the tolling of limitations in civil cases, it asserts that "the Court's reasoning applies in equal measure" to the Chief Judge's administrative orders tolling statutes of limitations in criminal cases. As to Mr. Dundore's reliance on *Michael*, the State argues that the statements he relies on are dicta and that, in any event, *Michael* is distinguishable because the prosecution there "attempted to revive a charge *after* the statute of limitations had already run" (as opposed to the Chief Judge's administrative orders that tolled limitations prospectively). In short, the State, citing *Murphy*, concludes that there is no reason to differentiate between civil and criminal limitations because the "Court's adoption of rules providing for the tolling of the statute of limitations in the event of an

11

emergency fell within the Court's constitutional authority to adopt rules of practice and procedure." 478 Md. at 379.

IV.    Standard of Review

We review the trial court's denial of Mr. Dundore's motion to dismiss *de novo*. *Smith v. Wakefield, LP*, 462 Md. 713, 723 (2019). The primary question in this appeal is whether the Judicial Branch has the power to toll criminal statutes of limitations in certain emergency circumstances. Relevant to this issue, the General Assembly has declared:

> The power of the Supreme Court of Maryland to make rules and regulations to govern the practice and procedure and judicial administration in that court and in the other courts of the State *shall be liberally construed*. Without intending to limit the comprehensive application of the term "practice and procedure," the term includes the forms of process; writs; pleadings; motions; parties; depositions; discovery; trials; judgments; new trials; provisional and final remedies; appeals; unification of practice and procedure in actions at law and suits in equity, so as to secure one form of civil action and procedure for both; and regulation of the form and method of taking and the admissibility of evidence in all cases, including criminal cases.

Md. Code (1974, 2020 Repl. Vol., 2023 Supp.), § 1-201(a) of the Courts and Judicial Proceedings Article ("CJP") (emphasis added).

V.    Analysis

Mr. Dundore does not challenge the Chief Judge's basic authority to issue the administrative tolling orders, presumably because of *Murphy*'s explicit approval of that authority as found in Article IV of the Maryland Constitution and the Maryland Rules. 478 Md. at 369. Instead, Mr. Dundore's core argument is that because the Supreme Court's rulemaking authority pursuant to Article IV, § 18 is limited to matters of procedure and practice, the Court does not have the power to promulgate rules that substantively alter

12

causes of action. Because he views criminal statutes of limitations as "substantive, not procedural," he reasons that the administrative tolling orders are unconstitutional as applied to criminal cases.

Mr. Dundore cites *Consol. Constr. Servs., Inc. v. Simpson*, 372 Md. 434, 451 (2002), to support his argument that the Court does not have the power to "initiate substantive changes to causes of action." In *Consol. Constr. Servs.*, the Supreme Court considered "whether monies held in a settlement fund pursuant to certain settlement conditions," which the judgment debtor would not "receive directly," could be subject to garnishment. *Id.* at 447. The relevant statute, CJP § 3-305 states: "An attachment may be issued against any property or credit, matured or unmatured, which belong to a debtor." The Court was tasked with determining the constitutionality of Rule 2-645(a), concerning garnishment, that stated: "Property includes any debt owed to the judgment debtor, whether immediately payable, unmatured, *or contingent*."[7] *Consol. Constr. Servs.*, 372 Md. at 447 (emphasis added). The Supreme Court held that the inclusion of "the word 'contingent' added another class of property that could be subject to attachment by way of garnishment. In doing so the court erred." *Id.* at 448. Garnishment is "'a remedy created and controlled by statute[,]'" and "[t]he addition of the term 'contingent' was a substantive change by our Rule to the otherwise limiting language of a statutory cause of action." *Id.* at 445, 449 (quoting *Bragunier Masonry Contractors, Inc. v. Catholic Univ. of Am.*, 368 Md. 608, 621 (2002)). The Court explained that the Maryland Constitution limits the Supreme Court's

---

[7] In light of the *Consol. Constr. Servs.* holding, Rule 2-645(a) was amended in 2003 to remove the words "or contingent."

"rule making power to matters of procedure and practice. It does not confer upon [the] Court the power to, by rule, add substantive elements to causes of action." *Id.* at 451. Thus, the Court concluded:

> As we have indicated, attachment and garnishment proceedings are creatures of statute. As such the substance of the statute, so long as constitutional issues are not present, is the province of the Legislature and not the courts. The statute only permits the garnishment of matured and unmatured property or credits belonging to the garnishor's debtor. When we added contingent property or credits by rule, we added a substantive element to a statutory cause of action. In doing so, we exceeded our rule making authority.

*Id.* at 451-52.

Mr. Dundore's reliance on *Consol. Constr. Servs.* is unpersuasive. The *Murphy* Court expressly recognized that *Consol. Constr. Servs.* struck down "a rule that added a substantive element to attachment and garnishment proceedings[,]" but concluded that "[a] statute of limitations . . . neither creates a right of action nor pertains to the merits of a cause of action[.]" *Murphy*, 478 Md. at 375; *see also Anderson v. United States*, 427 Md. 99, 118 (2012) ("Statutes of limitations promote judicial economy and fairness, but do not create any substantive rights in a defendant to be free from liability."). *Murphy* therefore rejects any notion that, at least in the civil context, the administrative tolling orders resulted in substantive changes to causes of action.

Mr. Dundore principally relies on *State v. Michael*, 2 Md. App. 750, 755 & n.4 (1968), for the proposition that criminal statutes of limitations are substantive and cannot be altered by the Judicial Branch under Article IV, § 18 of the Maryland Constitution. We likewise find this argument unpersuasive.

Michael was indicted for multiple counts of conspiracy to obtain money by false

14

pretenses based on events that occurred between December 29, 1958, and November 2, 1961. *Id.* at 751-52. This indictment was "well within" the one-year statute of limitations. *Id.* at 754. Michael pleaded guilty, but also filed an appeal. *Id.* While Michael's appeal was pending, the Supreme Court decided *Schowgurow v. State*, which held that "the provisions of the Maryland Constitution requiring demonstration of belief in God as a qualification for service as a grand or petit juror are in violation of the Fourteenth Amendment[.]" 240 Md. 121, 131 (1965). Because Michael was indicted by a grand jury that was impaneled with an improper qualification for service, "Michael's appeal was remanded so that he could be given an opportunity to dismiss the original indictment[.]" *Michael*, 2 Md. App. at 754. The original indictment was dismissed on January 28, 1966. *Id.* "On April 6, 1966 a newly constituted grand jury returned the present indictment in a form which is identical to the original indictment." *Id.* The trial court determined that this second indictment was barred by the statute of limitations. *Id.* at 752.

On appeal, the State argued that the original indictment tolled the statute of limitations. *Id.* at 754. Specifically, the State argued that the rule established in *State v. Kiefer*, 90 Md. 165 (1899), "that an invalid indictment does not toll the statute of limitations" was changed with the adoption of Maryland Rule 725 e. *Michael*, 2 Md. App. at 754. Maryland Rule 725 e, modeled after Rule 12(b)(5) of the Federal Rules of Criminal Procedure, provided:

> If a motion is determined adversely to the accused he may plead. A plea previously entered shall stand. If the court grants a motion based on a defect in the institution of the prosecution or in the indictment, it may order that the accused be held in custody, or that his bail be continued for a specified time pending the filing of a new indictment.

15

*Michael*, 2 Md. App. 754-55. Federal Rule 12(b)(5) contained nearly identical language, but also contained the following sentence that was not included in Maryland Rule 725 e: "Nothing in this rule shall be deemed to affect the provisions of any act of Congress relating to periods of limitations." *Michael*, 2 Md. App. at 755. The State argued that the omission of that sentence in the Maryland rule "indicated an intention to alter the rule of *State v. Kiefer*[.]" *Id.* The Court rejected this argument, reasoning:

> The simple answer to this argument is that Appendix C to the Maryland Rules, purporting to list all of the statutes modified by the Rules, does not include [the relevant statute of limitations]. Furthermore, the grant of rule making power to the Court of Appeals of Maryland by Section 18A of Article IV of the Maryland Constitution is for the purpose of regulating "practice and procedure." We know of no authority holding that a statute of limitations comes within such a grant.

*Id.* (footnotes omitted). Mr. Dundore also points to a footnote appended to the final sentence of the above-quoted passage that reads: "See Clark and Marshall: Law of Crimes Sec. 6.20 and 1 Wharton's Criminal Law and Procedure (Anderson's 12th Edition) s 179. A criminal statute of limitations is substantive and not procedural." *Id.* at 755 n.4.

As noted, Mr. Dundore relies heavily on the language in the footnote that "[a] criminal statute of limitations is substantive and not procedural." *Id.* Notably, no Maryland case has relied on *Michael* for the proposition that criminal statutes of limitations are substantive, or that the Supreme Court lacks the authority to regulate statutes of limitations. On the contrary, in *Brooks v. State*, this Court discussed the applicability to criminal cases of Rule 2-323's requirement that a statute of limitations defense be raised in an answer, and concluded that "the nature of the plea of limitations, and its timing, as determined in the civil context, is equally applicable to criminal trials." 85 Md. App. 355, 363-65 (1991).

16

We reasoned that

> Treating pleas of limitations the same in civil and criminal trials is consistent with the policy expressed in the 87th Report of the Standing Committee on Rules of Practice and Procedure, dated December 9, 1983: "to provide consistency between the criminal rules and counterpart civil rules where there is no apparent reason for differentiation."

*Id.* at 365-66. *Brooks* therefore undermines Mr. Dundore's claim that criminal statutes of limitations are beyond the Supreme Court's authority to regulate practice and procedure. Moreover, Maryland Rule 1-203(a), which governs "computing any period of time prescribed by these rules . . . or by any applicable statute," applies equally to criminal and civil cases, and the Rule's application includes "the computation of time for purposes of a statute of limitations." *Murphy*, 478 Md. at 344.

It is not surprising that Mr. Dundore latches onto the *Michael* Court's observation that "We know of no authority holding that a statute of limitations comes within [the grant of the Supreme Court's rulemaking authority in Article IV, § 18]." 2 Md. App. at 755. Although that statement may have been true when *Michael* was decided in 1968, *Murphy* represents express authority that the Supreme Court's "adoption of rules providing for the tolling of the statute of limitations in the event of an emergency [falls] within the Court's constitutional authority to adopt rules of practice and procedure." 478 Md. at 379. Moreover, as the State correctly notes, *Michael* is easily distinguishable because the prosecution there attempted to revive a charge *after* the statute of limitations had expired. 2 Md. App. at 754. To the contrary, the Supreme Court's tolling orders did not revive

17

expired claims—they merely tolled or suspended limitations during the pendency of an emergency.[8]

Although the case does not involve the Supreme Court's constitutional rulemaking authority, we find *State v. Stowe*, 376 Md. 436 (2003), instructive. There, the Supreme Court determined that a legislative change that removed the one-year statute of limitations for certain misdemeanors could not be applied retrospectively to crimes occurring more than one year before the change took effect. *Stowe* is relevant to our analysis because the Court applied the principle that "a change affecting procedure only, and not substantive rights, made by statute (and an amendment of the Maryland Rules has essentially the same effect)" may be applied retrospectively, but a substantive change will generally be applied prospectively. *Id.* at 454 (quoting *Janda v. General Motors Corp.*, 237 Md. 161, 168 (1964)). "[I]n deciding whether the increase [in the statute of limitations period] is remedial or substantive, we look to the effect, not the form of the law." *Id.* at 457 (first alteration in original) (quoting *State v. Humphrey*, 983 P.2d 1118, 1123 (Wash. 1999)). Therefore, because Stowe's crime occurred prior to the legislative change, "[t]he increase in the statute of limitations period from one year to infinity, operated 'more in the nature of a new liability than a remedial increase in an already existing [punishment].'" *Id.* at 458 (second alteration in original) (quoting *Humphrey*, 983 P.2d at 1123). Relevant to the instant case, the Court did not conclude that the General Assembly's removal of the one-

---

[8] Because Mr. Dundore's alleged offense occurred on April 27, 2020, the statute of limitations as to his prosecution had not even commenced as of the date of the initial tolling orders.

year statute of limitations for certain crimes could only be applied prospectively because criminal statutes of limitations are inherently substantive. Rather, it looked to the "effect" of the change and concluded that it was "more in the nature of a new liability." *Id.* (quoting *Humphrey*, 983 P.2d at 1123). *Stowe* implicitly refutes Mr. Dundore's foundational argument that criminal statutes of limitations are always substantive and therefore beyond the Supreme Court's rulemaking authority. *See also U.S. ex rel. Massarella v. Elrod*, 682 F.2d 688, 689 (7th Cir. 1982) (holding that statute extending statute of limitations from eighteen months to three years was "merely procedural" in the context of *ex post facto* analysis); *Rice v. Univ. of Md. Med. Sys. Corp.*, 186 Md. App. 551, 563 (2009) (noting that although "a legislative attempt to revive the expired claim" would violate due process, "the legislature may extend a statute of limitations" as to a claim for which limitations has not yet expired). Moreover, although Mr. Dundore argues that *Stowe* is irrelevant because it involved a *legislative* extension of the statute of limitations, the *Stowe* Court expressly noted that a legislative procedural change has "essentially the same effect" as an amendment to the Maryland Rules. 376 Md. at 454 (quoting *Janda*, 237 Md. at 168).

Furthermore, our Supreme Court has stated that, even where a statute of limitations is substantive, it is not an "immutable" rule that limitations may not be tolled. *Chandlee v. Shockley*, 219 Md. 493, 498 (1959) (providing the example that, "[w]here war prevents access to the courts[,] the substantive as well as the remedial statute of limitations is tolled"). We note that *Chandlee* cites *Scarborough v. Atl. Coast Line R. Co.*, 178 F.2d 253 (4th Cir. 1949), with approval, adopting the *Scarborough* court's prescient observation that where "there is one exception (war), surely the infinite variety of human experience will

19

disclose others." 219 Md. at 499 (quoting *Scarborough*, 178 F.2d at 259). In our view, a global pandemic qualifies as another exception to the general rule that substantive statutes of limitations may not be tolled.

As we stated in *Brooks*, we see "no apparent reason for differentiation" between civil and criminal statutes of limitations in this case. *Brooks*, 85 Md. App. at 366. The reasoning in *Murphy* is equally applicable to criminal cases because the COVID-19 pandemic and the response to it greatly affected both civil and criminal trials. Although Mr. Dundore argues that the State was not precluded from pursuing charges against him during the period that the courts were closed to the public,[9] it is equally true that civil litigants could file pleadings during that time, either electronically, by mail, or via drop boxes. But *Murphy*'s reasoning did not rely on a party's mere inability to file a complaint. The Court considered the full context of the pandemic's effect on our citizens and the Judiciary, including "the Governor's stay-at-home orders and the restricted operations of the courts" that created delays in "the processing of routine matters[,]" as well as the reduced "ability of parties and potential litigants to meet with counsel, conduct research, gather evidence, and prepare complaints, pleadings, and responses." *Murphy*, 478 Md. at 369, 381. These same considerations apply to criminal cases, even if we assume that criminal cases were less impacted by the pandemic than civil cases. As *Murphy* states,

---

[9] The May 22, 2020 administrative order allowed for the resumption of grand juries and the empaneling of new grand juries. Administrative Order Lifting the Statewide Suspension of Jury Trials and Resuming Grand Juries (May 22, 2020), https://mdlaw.ptfs.com/awweb/pdfopener?md=1&did=29851 (https://perma.cc/UD7A-UNR7).

courts may toll statutes of limitations to "gratify legislative intent" by giving parties the amount of time to act that was contemplated in the statute of limitations. *Id.* at 345 (quoting *Philip Morris USA, Inc. v. Christensen*, 394 Md. 227, 239 (2006), *abrogated on other grounds by Mummert v. Alizadeh*, 435 Md. 207 (2013)). Here, the administrative order tolling statutes of limitations for the amount of time that the courts were closed to the public was issued in recognition of the reduced ability to act during the height of the COVID-19 pandemic, thus preserving legislative intent. Because "[a] statute of limitations . . . neither creates a right of action nor pertains to the merits of a cause of action[,]" we conclude that the tolling of limitations in this case "falls within the field of procedural matters" contemplated by the Supreme Court's constitutional authority. *Id.* at 375-76. Indeed, our holding is consistent with the legislative intent expressed in CJP § 1-201(a) that the Supreme Court's rulemaking authority "shall be liberally construed." Applying this statutory directive, the provision in the April 3, 2020 administrative order that tolled or suspended "*all* statutory and rules deadlines" must be construed to encompass both civil and criminal statutes of limitations. (Emphasis added). Finally, even if we were to accept Mr. Dundore's premise that criminal statutes of limitation are substantive, we reject any "immutable" rule that limitations cannot be tolled under any circumstances. *Chandlee*, 219 Md. at 498.

In conclusion, we hold that the Chief Judge did not violate Article IV, § 18 of the Maryland Constitution by tolling criminal statutes of limitations for the amount of time courts were closed to the public during the COVID-19 pandemic. Thus, the trial court did not err in denying Mr. Dundore's motion to dismiss the second-degree assault charge.

21

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**